THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD SLY, Respondent-Appellant.

Second District   Nos. 78-200, 78-314 cons.

Opinion filed April 1, 1980.

Ralph Ruebner, Mary Robinson, and Michael Mulder, all of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Barbara Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Respondent, Donald Sly, appeals from a trial court order finding him to be a sexually dangerous person and committing him to the custody of the Department of Corrections, and from the trial court's denial of his petitions for recovery.

Respondent was originally committed as a sexually dangerous person on December 5, 1966. On July 7, 1976, the United States District Court for the Northern District of Illinois, Eastern Division, ordered that respondent be released from custody on March 1, 1977, unless by that date a new commitment hearing was held wherein the standard of proof would be beyond a reasonable doubt in accordance with the decision of *United States ex rel. Stachulak v. Coughlin* (7th Cir. 1975), 520 F.2d 931, and *People v. Pembrock* (1976), 62 Ill. 2d 317, 342 N.E.2d 28. The public defender was appointed to represent respondent, and respondent was ordered to submit to psychiatric examinations.

On February 24, 1977, a hearing was held on the State's petition to commit respondent as a sexually dangerous person. Respondent filed a motion to dismiss the petition on the grounds that the Sexually Dangerous Persons Act (Act) (Ill. Rev. Stat. 1975, ch. 38, par. 105—1.01 *et seq.*) violated due process, equal protection, and the prohibition against cruel and unusual punishment as guaranteed by the Illinois and United States constitutions. A further motion to dismiss was filed on the grounds that the psychiatric reports failed to state that respondent was now sexually dangerous and failed to comply with the requirements set forth in the Act. The trial court denied both motions to dismiss, ruling that since it was proceeding under the original petition it would entertain only proof pursuant to the original petition. Respondent's motion to suppress statements was taken with the case.

At the hearing, Dr. J. G. Graybill testified that he had examined respondent on October 3, 1966, and had concluded that respondent was a sexually dangerous person "because of his long standing and recurrent episodes of anti social behavior." On cross-examination, Dr. Graybill testified that he used the following criteria primarily to conclude that respondent was sexually dangerous: that respondent had engaged in repetitive deviate sexual activity and could not control his aggressive impulses, particularly when under the influence of alcohol. Dr. Graybill

could not answer if respondent would be a sexually dangerous person without alcohol as a ventilating factor for his hostility since respondent's history revealed that he was under the influence of alcohol on every occasion in which a sexual episode occurred.

Dr. Carl Hamann testified that he examined respondent on October 18, 1966, and also concluded that respondent was a sexually dangerous person based on a personality defect, and that respondent had a history of proclivity of acting out sexually with minors for a period of over one year. On cross-examination, Dr. Hamann testified that in 1966, respondent did not have a mental disease or mental defect, and there was no evidence indicating that respondent would be hostile or aggressive in acting out sexually with minors.

Thereafter, there was testimony from both police and civilian witnesses about the events which led to respondent's arrest and committment as a sexually dangerous person in 1966. Over objection, the trial court admitted into evidence a certified copy of respondent's conviction in 1946 in Rock County, Wisconsin, for the offense of "unlawfully and feloneously indecently assaulting and taking improper liberties with the privates of a minor." In support of a motion to suppress, respondent then testified concerning the circumstances surrounding his arrest and the statement he gave to police in 1966. At the conclusion of the proceedings, the trial court denied the respondent's motion to suppress and found that the State had proved that in 1966 defendant was a sexually dangerous person beyond a reasonable doubt. Respondent's oral motion for a new trial was denied.

Respondent then filed a recovery petition pursuant to section 9 of the Act. (Ill. Rev. Stat. 1975, ch. 38, par. 105—9.) At the April 22, 1977, hearing on the petition, Dr. Frank Perez testified that he had consulted with respondent on several occasions since 1967 in his capacity as psychiatric consultant at the Menard Correctional Center. Dr. Perez prepared the most recent psychiatric evaluation of respondent dated March 17, 1977. Dr. Perez testified that respondent was well adjusted to prison life and caused no difficulty and was not a vicious or violent person. Respondent had been conditionally released in 1970 and within three years had become involved in a repetition of the same type of behavior that had occurred in 1966. Respondent was returned to Menard. At present, Dr. Perez did not see much change in respondent, who resisted discussing his problem. In Dr. Perez' opinion, whether respondent would revert back to the type of sexual crime he committed before would depend on the rewards and satisfactions he could find on the outside. On cross-examination Dr. Perez stated that he could not prove respondent was recuperated as long as defendant remained in prison. Dr. Perez was not opposed to placing respondent in a

noncustodial setting where respondent would be closely supervised, as he felt that respondent would improve with "the experience of life" and not with psychotherapy. However, whatever was decided was going to be a calculated risk. Dr. Perez stated further that he did not think respondent had any greater insight into his condition than when he saw him in 1970.

Dr. Hamann testified on behalf of respondent that he had examined respondent in 1977 and that based on this examination he was inclined to encourage a conditional release at this time. He found that respondent discussed his problems more, either as a result of group psychotherapy or on his own, and obtained satisfaction from his job as prison cook. Dr. Hamann recommended that respondent be placed in a living setting where he would be with other people so his behavior could be monitored. On cross-examination, Dr. Hamann testified that respondent was a 100-percent more composed now than in 1966. Respondent felt more secure and expressed the opinion that his prior conduct was foolish and unrewarding and disproportionate to the penalties involved. However, Dr. Hamann did not know if renewed difficulties would cause defendant to engage in similar conduct which had led to his incarceration.

Dr. Graybill, testifying on behalf of respondent, stated that while respondent's basic personality had not changed very much during the years, he appeared better adjusted. Since respondent's tendency for committing sexual offenses could not be checked within the prison, and since respondent had appeared to improve, Dr. Graybill recommended that respondent be conditionally discharged into a situation where he would have strict supervision and exposure to psychiatric intervention at a local mental health clinic. Under questioning by the trial court, Dr. Graybill admitted that a stressful situation could cause respondent to return to drinking and cause him to commit further crimes, but that this could not be predicted with any degree of certainty.

There was also testimony at this hearing regarding a facility to which respondent could be transferred if the recovery petition were granted. On May 6, 1977, the trial court denied respondent's petition for recovery. Respondent filed a second petition for recovery that was denied by the trial court on December 2, 1977.

The first issue raised by respondent is whether his right to due process was violated when the trial court refused to hear evidence concerning his present mental condition. The trial court ruled that since it was proceeding on the original petition filed in 1966, it would entertain only proof pursuant to the original petition. Respondent contends that the fact that the language of the Act is written in the present tense throughout demonstrates that the ultimate issue in a trial under the Act is the respondent's present mental status. The State, on the other hand, contends that the situation of the respondent here is not one which the statute

contemplated, and therefore, the use of the present tense in the Act cannot be used to support respondent's theory that it is his present rather than his past mental state which is at issue in this proceeding. Further, while acknowledging that the purpose of the Act is the care and treatment of persons such as respondent, not punishment, the State urges that it has a significant interest in having on the respondent's record his adjudication as a sexually dangerous person in order to make a fully informed decision on how to proceed against a person charged with a sex offense.

At the outset, we observe that the decision in *United States ex rel. Stachulak v. Coughlin* is silent on whether the mandated new hearings in these cases are to be on the original petitions, or whether new petitions, based on the various respondents' present mental conditions are to be brought.

Our review of the Sexually Dangerous Persons Act reveals that the Act requires that a person be released when he appears no longer dangerous. (See Ill. Rev. Stat. 1975, ch. 38, pars. 105—9, 105—10.) Thus an initial commitment based on past mental state could result in the unusual situation of a person being committed who is immediately eligible for release. In order to prevent such a result, the State suggests a procedure to be utilized only in those cases, such as respondent's, whereby an individual, upon being readjudicated a sexually dangerous person, would receive an immediate hearing to determine whether his present mental state was such that he should be released; that practically speaking, respondent received the benefit of such a determination as to his present mental state in the hearing on his petition for recovery.

While we agree with the State that the Act does not contemplate the present situation of this respondent, it is clear that the Act speaks to a defendant's present mental condition—"all persons *suffering*" (emphasis ours) (Ill. Rev. Stat. 1975, ch. 38, par. 105—1.01)—not to his past mental condition. Nowhere does the Act authorize the commitment of a person on the basis of his condition at some time in the past, without proof that the condition continues to exist. Specifically, section 105—9 of the Act requires that persons committed under the Act be released if they are no longer sexually dangerous. In *People v. Thingvold* (1969), 113 Ill. App. 2d 479, 251 N.E.2d 553, in considering the denial of a petition for recovery this court stated:

> "Although proceedings under the statute are civil in nature, the possible loss of individual liberty requires that certain procedural safeguards normal to criminal prosecutions be followed, and that the statute be strictly construed. [Citation.] The language of the statute makes it mandatory upon the court to grant a conditional release when it appears that the petitioner is no longer sexually

dangerous and a conditional release is necessary to fully evaluate whether or not there has been a total recovery." (113 Ill. App. 2d 479, 483, 251 N.E.2d 553, 554-55.)

While *Thingvold* dealt with a petition for recovery under the Act, it gives a further indication that the Act deals with present, not past, mental conditions. Further, one of the purposes of the Act is the care and treatment of the respondent. (*People v. Hodges* (1976), 36 Ill. App. 3d 422, 343 N.E.2d 565.) It would make little sense to commit respondent for care and treatment of a past mental condition, when he may not be presently suffering therefrom.

Another purpose of the Act is the protection of society from persons whose mental state would endanger the public. (*People v. Whitney* (1975), 33 Ill. App. 3d 729, 338 N.E.2d 233.) The State argues that it has an interest in respondent's adjudication as a sexually dangerous person as a matter of record. However, to confine a person on the basis of past dangerous behavior without ascertaining his present mental condition would only serve to punish him, which is not the purpose of the statute. *People v. Hodges.*

Nor do we find the State's suggested procedure (*i.e.*, an immediate hearing on respondent's recovery petition) for cases such as respondent's to be a viable one, for in seeking release under the recovery portion of the statute, respondent bears the burden of proof by a preponderance of the evidence that he is no longer a sexually dangerous person. *People v. Beksel* (1973), 10 Ill. App. 3d 406, 294 N.E.2d 111; *People v. Sweeney* (1969), 114 Ill. App. 2d 81, 251 N.E.2d 897.

■■ Therefore, we are of the opinion that respondent's adjudication as a sexually dangerous person must be reversed and the cause remanded for a prompt new hearing to determine whether or not respondent is presently a sexually dangerous person. Deciding the case as we do, we need not discuss whether respondent's petitions for recovery were properly denied.

Respondent has raised as error whether his rights to due process and counsel were violated by the admission into evidence of a prior conviction. Inasmuch as this question may arise upon retrial of this case, we shall address ourselves to it.

At the hearing on the petition to declare respondent a sexually dangerous person, the State sought to introduce into evidence State's exhibit No. 3, a certified copy of respondent's 1946 conviction in Rock County, Wisconsin, for the offense of "unlawfully and feloneously indecently assaulting and taking improper liberties with the privates of a minor." Respondent objected to the admission of the exhibit on the basis that it did not show that respondent was represented by counsel, advised of his rights and pleaded in an intelligent and knowing fashion to the

charge set forth in the exhibit. The trial court overruled the objection and admitted the exhibit into evidence. On appeal, respondent raises the same objection to the admission of the prior conviction.

■ Respondent contends that an uncounseled felony conviction may not be used to enhance punishment for a subsequent offense. (*People v. Dixon* (1970), 46 Ill. 2d 502, 263 N.E.2d 876.) However, State's exhibit No. 3 indicates on its face that in those proceedings respondent pleaded guilty to the charge and that he was advised of his right to both a trial and to be represented by counsel and he indicated that he understood those rights. Therefore, we conclude that respondent's rights to due process and counsel were not violated.

Respondent has also raised certain constitutional challenges to the validity of the Sexually Dangerous Persons Act, which we feel we should comment briefly on. Respondent contends that the Act violates the constitutional guarantees of due process and equal protection. However, our supreme court has previously resolved those arguments against the respondent's position. (See *People v. Pembrock* (1976), 62 Ill. 2d 317, 342 N.E.2d 28.) Respondent also contends that the indefinite incarceration resulting from his commitment under the Act violates the eighth amendment's prohibition against cruel and unusual punishment.

■■ ■ It has been held that penalties imposed by statute should not be interfered with unless the punishment is cruel, degrading or so wholly disproportionate to the offense committed as to shock the moral sense of the community or so disproportionate to the offense that it shocks the conscience of reasonable men. (See *People v. Jackson* (1969), 116 Ill. App. 2d 304, 322, 253 N.E.2d 527, 537.) Our supreme court in *People v. Pembrock* stated:

> "A 'sexually dangerous person' creates different societal problems, and his past conduct is different in degree and kind from the conduct of persons in the larger, more inclusive class defined under the Mental Health Code. The defendant has failed to show why, in light of these factors, the legislature is not justified in prescribing a different manner of treatment. As noted earlier, 'society has a substantial interest in the protection of its members from dangerous deviant sexual behavior.' *United States ex rel. Stachulak v. Coughlin* (7th Cir. 1975), 520 F.2d 931, 937." (62 Ill. 2d 317, 322, 342 N.E.2d 28, 30.)

The basis for respondent's confinement is not the fact of his mental illness, but due to the danger he presents to society, the confinement provides respondent with the mental treatment he requires while protecting the public from his dangerous behavior. The commitment must of necessity be for an indefinite term since there is no exact method of determining when the respondent would appear "no longer to be dangerous" or when

it would be "impossible to determine with certainty under conditions of institutional care that such person has fully recovered." (Ill. Rev. Stat. 1975, ch. 38, par. 105—9.) Therefore, we conclude that respondent's commitment under the Act is neither cruel nor degrading nor is it so wholly disproportionate to respondent's conduct as to shock the moral sense of the community or the consciences of reasonable men. Therefore, we hold that the Act does not violate the eighth amendment prohibition against cruel and unusual punishment.

For all the foregoing reasons, the judgment of the circuit court of Winnebago County is reversed and the cause remanded for a new hearing to be held at the earliest possible date.

Reversed and remanded.

SEIDENFELD, P. J., and LINDBERG, J., concur.