THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD A. STUDDARD, Defendant-Appellant.

Second District   No. 77-473

Opinion filed April 1, 1980.

Marc O. Beem, of Mandel Legal Aid Clinic, of Chicago, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Richard Studdard, appeals from a judgment of the Circuit Court of Winnebago County entered on a jury verdict finding him to be a sexually dangerous person.

In 1962, the State filed a petition against the defendant pursuant to the Illinois Sexually Dangerous Persons Act (Ill. Rev. Stat. 1961, ch. 38, par. 820.01 *et seq.*) in the Circuit Court of Winnebago County. After a bench trial, the court found defendant to be a sexually dangerous person by a preponderance of the evidence and entered an order remanding him to custody. Defendant remained in custody until he was conditionally released in 1968. This release was revoked in 1970. Respondent remained in custody until 1976 when *United States ex rel. Morgan v. Sielaff* (N.D. Ill. 1976), 76 C-1732, *aff'd* (7th Cir. 1976), 546 F.2d 218, held that the requirement of proof beyond a reasonable doubt in sexually dangerous persons proceedings, recognized in *People v. Pembrock* (1976), 62 Ill. 2d 317, 342 N.E.2d 28, and *United States ex rel. Stachulak v. Coughlin* (7th Cir. 1975), 520 F.2d 931, *cert. denied* (1976), 424 U.S. 947, 47 L. Ed. 2d 354, 96 S. Ct. 1419, was to be applied retroactively. Persons then in custody as sexually dangerous persons—including the defendant—who had been committed upon an improper standard were ordered released or retried. The State elected to retry the defendant.

Because some of the events surrounding defendant's 1962 trial remain in issue in this appeal, they must be briefly set forth. In 1962 defendant was charged in two separate indictments with (1) burglary with intent to commit rape and with attempted rape, and (2) burglary with intent to commit deviate sexual assault and with indecent liberties with a child. Subsequent to pleas of not guilty, defendant petitioned for appointment of two psychiatrists to examine him pursuant to section 2 of "An Act to provide for * * * a psychiatric examination of persons charged with sexual acts against children" (Ill. Rev. Stat. 1961, ch. 38, par. 825(g), now Ill. Rev. Stat. 1977, ch. 23, par. 2402 (sexual crimes against children)). Drs. J. G. Graybill and H. J. Drell were appointed and filed their findings with the court. Immediately after these findings were filed, the State filed its petition to have defendant declared a sexually dangerous person. The petition alleged the offenses contained in the two indictments and asked for the appointment of two psychiatrists to examine the defendant.

Apparently, however, no further examinations took place nor were any further reports filed. After a hearing, defendant was found to be a sexually dangerous person.

The proceedings resulting in the judgment now on appeal began on February 3, 1977. Defendant's motion to set bail was granted and he was released on $50,000 bond. The State's motion to have defendant examined by psychiatrists was granted and Drs. Hamann and Graybill were appointed. No new petition was filed against the defendant; the State instead indicated it was proceeding on the 1962 petition. A number of pretrial motions were then filed including a motion to suppress identification, a motion to suppress statements, and discovery motions.

The State resisted defendant's request for production of all psychiatric reports. The position of the State was that any evidence relating to events subsequent to 1962 would be irrelevant. The trial court agreed and ruled that only reports which referred to events prior to June 1, 1962, had to be turned over to the defendant. The court also ruled that the State would be required to confine its proofs to the allegatons in the original petition.

In March of 1977, the trial court heard defendant's motion to suppress. Glenn Kunz, who in 1962 was a Rockford police detective, testified that two eyewitnesses had viewed the defendant through a one-way mirror on January 5, 1962. The defendant testified that on this date he had blood on his clothing. Defense counsel also made an offer of proof in support of stricken paragraphs of the motion. Defense counsel stated that defendant would testify that he was in blood-stained, tattered clothing on January 5. He stood before the one-way mirror with two police officers. The officers were larger, heavier and taller than the defendant, and they were clean and well-dressed. It was further offered that one witness—D. M.—would testify that she was unable to make a positive identification of the defendant from a photographic display on January 5 or 6. Defendant's motion to suppress was denied. Certain paragraphs of an amended motion were struck on the basis that the law in 1962—which was found controlling—did not require suppression of an in-court identification because of a suggestive pretrial identification procedure.

On the date set for trial, May 18, 1977, the State's motion *in limine* was granted preventing the introduction of any evidence of events occurring after the committing order in 1962.

At trial, D. M. testified that she was age 10 in 1962 and on January 4, she was in St. Anthony's Hospital. She stated that a man entered her room and told her he was taking the regular doctor's place. He then pulled down her pajama bottoms and put his hand and mouth on her vagina before she pushed him away. She identified the man as the defendant;

however, on cross-examination she testified that she was unable to positively identify the man on January 5.

S. M. A. testified that she was 14 on January 4, 1962. She was then a resident of the Rockford Children's Home and was awakened by a man who lay down on her bed and attempted unsuccessfully to pull down her pajama bottoms. She reported this incident to a counselor. Although she stated the light was dim during the incident, she identified the defendant as the man who entered her room. Also testifying was J. B., who was a 16-year-old resident of the Home in 1962. She testified that she was awakened by the defendant who then took off her pajama bottoms, unzipped his pants, and got on top of her for four or five minutes.

Several witnesses, who were Rockford police officers in 1962, testified concerning the apprehension and questioning of defendant in January 1962.

The only expert witness for the State was Dr. Graybill. He testified that he examined the defendant in the county jail in May of 1962 pursuant to court order. Over objection he stated that the defendant told him he had previously been convicted of rape. He further testified that the defendant denied involvement in the charged crimes—stating instead that he could remember nothing of the alleged incidents. The doctor stated that it was his professional opinion that in 1962 the defendant was mentally ill and a sexually dangerous person as defined by the statute. Based on the 1952 rape conviction, Dr. Graybill expressed the opinion that this disorder had persisted at least 10 years prior to 1962. Defense counsel moved to strike this testimony on a number of grounds, including incompetency to testify as to the 1952 conviction, and the fact that the examination took place prior to filing of the petition. The trial court overruled these objections.

The only defense witness was Ruth Gloe who had been a Rockford policewoman in 1962. She testified that police reports reflecting an investigation she conducted in 1962 indicate that D. M. was unable to give a positive identification of a photo of the defendant as the man in her room because the room had been quite dark.

The jury found that the defendant had been a sexually dangerous person within the meaning of the Act. The post-trial motions of the defendant were denied, and a commitment order was entered. Defendant appeals.

Defendant raises seven issues on appeal: (1) whether the trial court properly relied upon the respondent's mental condition at the time the original petition for his adjudication as a sexually dangerous person was filed in determining whether the respondent was a sexually dangerous person, (2) whether the procedures below substantially complied with the

requirements of the Sexually Dangerous Persons Act, (3) whether the respondent was denied a fair trial by the trial court's refusal to consider whether the identification of the respondent should be suppressed because of allegedly suggestive procedures employed by the police in 1962, (4) whether the trial court acted properly in denying the respondent's motion to strike the testimony of Dr. Graybill, (5) whether the trial court erred in admitting testimony regarding a prior conviction, (6) whether the existence of the respondent's mental disorder for a period of more than one year prior to the filing of the sexually dangerous persons petition was proved beyond a reasonable doubt, and (7) whether the respondent was deprived of due process by the inclusion of the sexually dangerous persons petition of an indictment which had been *nol prossed*.

■■ Defendant's major contention is that the trial court erred in ruling that the issue at trial was the defendant's mental condition in 1962 rather than his condition at the time of retrial. In *People v. Sly* (1980), 82 Ill. App. 3d 742, 403 N.E.2d 72, filed concurrently with the instant opinion, this court reasoned that in order to fulfill the purposes of the Sexually Dangerous Persons Act and to protect a defendant's rights, a defendant must be tried on the basis of his current mental condition. Accordingly we hold that the defendant's adjudication as a sexually dangerous person must be reversed and this cause remanded for a new hearing to determine whether defendant is presently a sexually dangerous person within the meaning of the Act.

As noted above, defendant has raised a number of other issues on appeal. Because of the possibility that certain of these issues may arise upon remand, we will briefly address the merits of some of these issues.

■■ ■ The defendant moved to suppress his identification by three eyewitnesses on the basis that the photo display and viewing through a one-way mirror were overly suggestive. The trial court did not directly reject this contention of suggestiveness. Instead it ruled that the procedures employed were not illegal under the law in effect in 1962 and thus were not now subject to challenge. The State concedes that this ruling was in error. Even where identification procedures predate the United States Supreme Court rulings on suggestiveness, the accused must be allowed to attempt to prove that the procedures were so suggestive as to violate due process. (*People v. Blumenshine* (1969), 42 Ill. 2d 508, 250 N.E.2d 152.) Thus on remand the defendant should be given a full hearing on any renewed motion to suppress these identifications.

■■ Dr. Graybill was the sole psychiatric witness for the State. At trial defendant moved to strike this testimony on various grounds. One such objection was based on the doctor's alleged presumption that the charges against the defendant were true. The State argues that a psychiatrist is under no obligation to undertake an independent investigation of the

crime in question. This point is well taken. However we also find it unfair to allow a psychiatrist to totally ground his diagnosis on an assumption that the defendant committed the acts alleged in the charging instrument. It is clear from the record that part of the doctor's report was based upon such an assumption. However, it is clear that the doctor's findings were also based on his interview of the defendant and on psychological tests administered by a colleague. Thus, on balance there is no prejudice to defendant from the doctor's diagnosis.

■ Defendant also contends that it was error to permit testimony concerning a prior conviction for rape. Evidence of a prior sex crime is clearly relevant as the State is required to prove that the defendant has a propensity to commit sex crimes and that his mental disorder had existed for more than one year. (Ill. Rev. Stat. 1977, ch. 38, par. 105—1.01.) The State concedes that it would have been a better practice to have offered into evidence a certified copy of this conviction. Thus we suggest the use of a certified copy of this conviction should this evidence be considered relevant on remand.

Finally, defendant points out that while the petition on which he had been committed alleges the existence of two pending indictments, one of the indictments had been *nol prossed* in June of 1962. Defendant asserts that this defect is fatal as it is unclear if his conviction is a bar to future prosecution based on the conduct in this indictment. (See *People v. Pujoue* (1975), 61 Ill. 2d 335, 335 N.E.2d 437.) The Sexually Dangerous Persons Act provides that "every outstanding information and indictment, the basis of which was the reason for the present detention, shall be quashed." (Ill. Rev. Stat. 1977, ch. 38, par. 105—9.) Defendant argues that it is unclear whether or how the *nol prossed* indictment is to be quashed, since the indictment was no longer "outstanding." In light of this problem, any future petition should reflect the actual status of outstanding charges against the defendant.

For the foregoing reasons, the judgment of the Circuit Court of Winnebago County is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

WOODWARD and UNVERZAGT, JJ., concur.