THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROY CORD, Defendant-Appellant.

Second District   No. 2—90—0993

Opinion filed January 14, 1993.

G. Joseph Weller, of State Appellate Defender's Office, and George Irizarry, both of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Roy Cord, was convicted of first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(1)) and sentenced to 88 years' imprisonment. On appeal he argues that he was denied the effective as-

sistance of trial counsel when counsel introduced an officer's written account of defendant's confession which contained aggravating information. Defendant also argues the trial court abused its discretion by entering an excessive sentence.

Defendant pleaded guilty to the murder of Steven Moss in return for the State's agreement not to seek the death penalty. The court accepted the plea and conducted a sentencing hearing. The State prepared a lengthy presentence information report, and the defense prepared a sentencing memorandum. During the plea, defendant admitted stabbing Moss repeatedly with a knife and causing his death. The State stated that it would introduce evidence that the victim was anally assaulted before or after the death. Defense counsel stated that defendant had no memory of the events other than his rage during the stabbing. Counsel further stated that the medical examiner determined that the anus had begun to heal after the anal penetration and that the victim was alive during the penetration; however, counsel could not tell from this determination whether the penetration was consensual or when it occurred.

At the sentencing hearing, the State introduced the testimony of John Secor, who owned a car repair business. On December 23, 1987, defendant broke into Secor's garage and house. He grabbed Secor's arm and tried to pull it through the hole in the door. Defendant was not so much talking as growling, and he fainted when the police arrived. Defendant had been friendly, nice, courteous, and good, and Secor could not understand why defendant had acted violently. Officer Thomas Judd of the Round Lake Beach police department testified that he found defendant covered with blood and grunting. Defendant was convicted of burglary for this incident, and he was on probation for the burglary when he killed Moss. The trial court had the presentencing reports and progress reports relating to the burglary charge.

Officer Judd also testified that he was the first officer to report to the scene of the murder. He found Moss' body in a second-floor bedroom. A dead poodle was in the lower level. Judd saw several beer bottles about the ransacked house. Judd authenticated photographs showing Moss' body with bloody stab wounds.

Dr. Nancy Jones, a medical examiner and a forensic pathologist, testified that the victim suffered 41 stab, incise and puncture wounds, mostly on the left side and around the head and chest. The victim's pants and underwear were pulled down. A knife had punctured the lungs. The knife cut the left and right ventricles of the heart, which continued to beat. Bleeding into the pericardium cavity had not stopped the heart because the blood drained out through the wounds.

The victim also had a dilated rectum which showed a laceration in the mucus membrane, as if there had been sexual penetration. The rectum showed hemorrhaging, which indicated that the heart was pumping blood at the time of the penetration. Dr. Jones concluded the victim was alive at the time of the penetration. She testified the poodle was also stabbed.

The court read the victim impact statements of the victim's brother, father and mother. The court later stated it redacted the statements to consider only the statutorily authorized factors in them. The victim's girlfriend, who was the mother of his son, read her statement in which she stated that the murder had shattered their plans to start a home together.

A sheriff's deputy stated that while he was on duty at the Lake County jail, defendant had approached him and stated that he was going to be sentenced for murder. Defendant told him, "I killed a fag" because the victim touched him while they were in a bar. Defendant walked away from the deputy and said, "Oh, well, shit happens." However, defense counsel impeached the deputy's recollection of the conversation.

After the State rested, defense counsel introduced a statement written by Sergeant David Ostertag of the Round Lake Beach police department in which he related defendant's confession to the murder. This report formed the basis of the alleged ineffective assistance. The report supplies defendant's account of how the murder occurred.

Defense counsel called Dr. Gerald Girdaukas as his primary witness and to authenticate his psychological report. Dr. Girdaukas was a licensed clinical psychologist who examined defendant prior to the sentencing hearing. Defendant was borderline mentally retarded with an IQ of 76 at age 22. The tests indicated that defendant had significant intellectual, emotional, and educational difficulties. Defendant had no significant history of violent crimes other than the burglary. Since then, he had adapted well by working at the Lambs' Farm and at a grocery store. Defendant had an alcohol problem earlier, but progressed well with regular attendance at Alcoholics Anonymous meetings. Shortly following several positive mental evaluations, defendant committed the murder. Dr. Girdaukas found defendant to be very anxious with intensely emotional behavior. The behavior was consistent with previous reports.

Dr. Girdaukas concluded that sexual confusion was at the heart of the offense. Defendant thought the victim was a homosexual because twice he put a hand on defendant's shoulder. The events of the night, aggravated by drinking in a bar, created emotions so powerful that

defendant could not control his emotions. Aberrant homosexual patterns are commonly found among individuals who were homosexually assaulted themselves. The pattern is often the subject of societal scorn, and the emotions become fixed in recesses deep in the subject's mind. In addition, defendant felt rejected when he was called a "retard." Defendant's suffering a rape by his stepfather was a factor which explained the rage of a multiple stab attack. The violence was an enormous eruption of emotion that occurred from a building up of frustration, secrecy, self-alienation and abuse. Defendant killed the victim in a homosexual panic.

On cross-examination, Dr. Girdaukas testified that defendant told him that defendant's stepfather had beaten him and was a violent person when he drank alcohol. However, Dr. Girdaukas admitted defendant did not tell him that the stepfather had sexually assaulted him.

On redirect examination, Dr. Girdaukas explained that during the psychological examination defendant became severely anxious and uncontrollable when the doctor tried to ask about defendant's sexual feelings, which caused him pain. Defendant could not deal with the feelings. Dr. Girdaukas had to obtain a sexual history from secondary sources. Defense counsel introduced Ostertag's report in which the officer related that he asked defendant if he had been sexually assaulted, and defendant responded that he had. Ostertag asked if the perpetrator was his father and defendant nodded, said "yes," and cried. Dr. Girdaukas found the paragraph very descriptive of defendant's emotional conflict. Dr. Girdaukas noted that defendant first denied anything happened and then broke down.

Defendant's uncle testified that his parents did not give him the attention they gave to his brothers. Defendant's father Ray adopted him when he married defendant's mother. Defendant's brothers treated defendant like a brat and a patsy. Defendant's aunt testified that defendant had been good and took care of other children and would help others. She was surprised when defendant started to drink. A friend of defendant's father testified that defendant was always helpful and never violent.

Defendant's older stepbrother testified that while he never saw his father Ray physically abuse defendant, Ray verbally abused him, which hurt defendant more. Ray called him a "no-good worthless S.O.B." Defendant was good, and he was active in his church and service organizations. He taught religion to retarded students. He taught high school students about the dangers of drug abuse.

Defendant's mother was sad that defendant needed special help that she could not provide. Defendant was loving and caring and had

adjusted well to the right environment, such as that at Lambs' Farm. Defendant's sister testified that defendant was a warm and caring person.

The prosecutor asked the court to impose a sentence of life imprisonment because the crime was brutal and heinous. Defense counsel argued that while a multiple stabbing may appear brutal at first glance, defendant's actions were not "indicative of wanton cruelty" as the statute required. The wounds showed the actions of an unthinking rage rather than a cold infliction of wounds calculated to cause death or an intentional torturing of a victim. However, the trial court noted that in Ostertag's report defendant admitted he sexually assaulted the victim after inflicting the wounds; this assault occurred while the victim was alive. The court thought this second offense indicated defendant acted with wanton cruelty. Defense counsel stated he introduced Ostertag's report because at the conclusion of the report defendant had demonstrated how remorseful he was and because it showed defendant was abused as a child.

The trial court reviewed the statutory framework for imposing the sentence for murder. Under section 5—8—1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1)(a)), the court must impose a term of imprisonment between 20 and 60 years. If the court finds the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or if the court finds the defendant eligible for the death penalty, the court may impose a term of natural-life imprisonment. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1)(b).) A defendant is eligible for the death penalty if the victim was killed in the course of another felony and the defendant actually inflicted the fatal blow and the defendant had the intent to kill or acted with knowledge that the acts created a strong possibility of death (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(b)(6)); the other felony must be in a list which includes aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1(b)(6)(c), 12—14(a)). In the alternative, if the court determines that the extended term applies, the court may sentence a defendant to 60 to 100 years' imprisonment for first degree murder. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—2(a)(1).) The extended term may apply if the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(2).

The trial court found that defendant was eligible for the death penalty because defendant committed the murder during the course of another felony, namely, aggravated criminal sexual assault. The court also found defendant was eligible for the extended term because of

the exceptionally brutal and heinous behavior indicative of wanton cruelty. The court found few mitigating circumstances to outweigh the aggravating circumstances. The court discounted the factor of the defendant acting under a strong provocation because there was no potential for an insanity defense. Being a victim of sexual abuse did not justify defendant's violent reactions against the victim. Nobody had a right to react violently to homosexual advances, and there was no substantial evidence that the victim had made advances. The court queried how to protect citizens who make innocent gestures when the defendant might react violently. The court noted defendant admitted he knew he should not be drinking, but had abandoned his efforts at reform. The trial court did consider defendant's youth and mental problems as mitigating factors. However, the court considered defendant a danger to the public and sentenced him to 88 years' imprisonment.

On appeal, defendant contends that trial counsel blundered by introducing the Ostertag report. The State had adduced no evidence that the sexual penetration was not consensual and had not occurred prior to the stabbing. The trial court relied on the report which demonstrated that the penetration was committed on a dying man. This fact showed the murder to be indicative of wanton cruelty and to have been committed in the course of another felony. Defendant on appeal contends that if trial counsel had not introduced the statement, the court would not have evidence showing defendant was eligible for life imprisonment or the extended term. Since the 88-year term exceeds the 60-year maximum for the unextended term, defendant contends he was prejudiced by trial counsel's introduction of the statement. Moreover, defendant contends that the statement contradicted trial counsel's representations that defendant had no memory of the assault. In the statement, defendant stated he sexually assaulted the victim after he stabbed him. Defendant was still in a rage and vandalized the house and killed the dog, which was barking at him. The trial court mentioned other statements made by defendant in the report.

A defendant may establish a claim of the ineffective assistance of counsel by showing that trial counsel's performance was so seriously deficient as to fall below an objective standard of reasonableness under prevailing professional norms and that the deficient performance so prejudiced the defense as to deny the defendant a fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; *People v. Williams* (1991), 147 Ill. 2d 173, 235.) The performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. (*Williams*, 147

Ill. 2d at 235.) A defendant must also overcome the strong presumption that the challenged action might be considered sound trial strategy. 147 Ill. 2d at 235, 247.

The State contends that defendant was not prejudiced by the introduction of the statement because the trial court did not impose a term of life imprisonment but of 88 years' imprisonment. The State contends that defendant was not prejudiced because, the State maintains, defendant was eligible for a life term under either the course of another felony factor (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(b)(6); see *People v. Thomas* (1990), 137 Ill. 2d 500, 533) or the brutal and heinous nature of the crime (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(b)). However, the trial court found both enhancements based on the evidence appearing in the Ostertag report. The trial court found the crime to be indicative of wanton cruelty because defendant sexually assaulted a dying man. While the number of wounds by itself can make a murder heinous (see *People v. Hernandez* (1990), 204 Ill. App. 3d 732, 742-43), we need not speculate whether the trial court would have found defendant's outburst more worthy of an extended term than that of a cold, wanton and calculated murder. A defendant must prove both prongs of the *Strickland* test, and defendant has failed to show an error by his trial counsel.

■ A defendant cannot complain of a trial counsel's actions when the actions are part of a sound trial strategy. (*People v. Gacy* (1988), 125 Ill. 2d 117, 125.) Trial counsel's strategy involved portraying defendant as an essentially good person, young and rehabilitatable, who suffered an aberration caused by emotional trauma earlier in life. Trial counsel also wanted to rebut the lack of remorse. (See *People v. Andrews* (1989), 132 Ill. 2d 451, 466; *People v. La Pointe* (1981), 88 Ill. 2d 482, 501 (lack of remorse is an indication of a brutal and heinous crime).) Defendant's primary evidence was the psychological opinion which explained how he could have committed such a crime. The psychologist relied upon defendant's statement that he himself was abused as a child; the only such statement in the record appeared in the Ostertag report. The psychologist also found the whole course of defendant's conversation with the officer corroborative of his psychological opinion. Defendant's statement reflects trial counsel's theory that the whole stream of events occurred during an emotional rage. Defendant expressed that he was shocked by what he was doing. The statement reveals that defendant did not enter the victim's house to burglarize, steal, or commit any felony. We will not second-guess counsel's strategy. Counsel had a difficult task of giving some meaning to a senseless murder. The introduction of the statement was

consistent with a sound trial strategy, and we will not find that defendant was denied the effective assistance of counsel. Moreover, the victim was found with his pants down; thus, the trial court already had evidence that the murder was committed in the course of an aggravated criminal sexual assault.

Defendant also argues that the 88-year sentence was excessive and an abuse of discretion. The Illinois Constitution provides that all penalties shall be determined both according to the seriousness of the offense and with the object of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, §11; see Ill. Rev. Stat. 1989, ch. 38, par. 1001—1—2(d).) Defendant contends the trial court violated this provision because it ignored the constitutional mandate to restore defendant to useful citizenship when it imposed an 88-year term on a 22-year-old man. Defendant cites this court's opinion of *People v. Treadway* (1985), 138 Ill. App. 3d 899, in which we reduced a 60-year extended sentence to a 30-year term because the trial court did not give the defendant the possibility of being restored to useful citizenship. (138 Ill. App. 3d at 904-05.) As in *Treadway*, the outburst of violent stabbing occurred during a "fleeting moment of intoxicated rage." (138 Ill. App. 3d at 905.) Defendant asks us to use our powers under Supreme Court Rule 615 (134 Ill. 2d R. 615) to reduce the sentence. Defendant asks us to consider his youth, borderline mental retardation, alcohol abuse, childhood abuse, and his improvement in behavior in a proper environment.

The standard of review is whether a trial court has abused its discretion in imposing a sentence. (*People v. Streit* (1991), 142 Ill. 2d 13, 19.) When reviewing courts examine the propriety of sentences, they should proceed cautiously. A trial court's decision is entitled to great deference and weight. A trial judge is in a far better position than an appellate court to fashion an appropriate sentence because the judge can make a reasoned judgment based on firsthand consideration of such factors as the defendant's credibility, demeanor, moral character, mentality, social environment, habits, and age. (142 Ill. 2d at 18-19.) A trial court must consider mitigating evidence and determine what weight to assign it; however, the court may not give it no weight. (*People v. Phillips* (1989), 127 Ill. 2d 499, 535.) A reviewing court will not substitute its judgment for that of a sentencing court merely because it would have weighed the factors differently. *Streit*, 142 Ill. 2d at 19.

█ The trial court is not required to mention and assign a value to each mitigating factor. (*People v. Powell* (1987), 159 Ill. App. 3d 1005, 1011.) Where the mitigating evidence is before the trial court, it

is presumed that the trial court considered it. (*People v. Coppula* (1991), 212 Ill. App. 3d 52, 55.) Here, the trial court specifically mentioned the mitigating factors and stated that it was reducing the potential sentence because of them. The trial court also mentioned defendant's efforts to curb his drinking and his opportunities to reform, from which defendant strayed the night of the crime. While defendant's potential for rehabilitation will not be served by an 88-year sentence, the rehabilitative potential is not entitled to greater weight than the seriousness of the offense, the protection of the public, and punishment. (*People v. Harris* (1992), 231 Ill. App. 3d 876, 881; *People v. Wright* (1987), 161 Ill. App. 3d 967, 978-79; *People v. Rogers* (1986), 141 Ill. App. 3d 374, 382.) Here, the trial court determined that these factors outweighed defendant's rehabilitative potential. While the court considered the totality of defendant's mind-set, the court could not forget the totality of the harm felt by the victim or the nature of the crime itself. Thus, we will not find that the trial court abused its discretion in sentencing defendant. See *People v. Kendall* (1991), 213 Ill. App. 3d 782, 788-89.

For the above reasons, the judgment of the circuit court is affirmed.

Affirmed.

INGLIS, P.J., and UNVERZAGT, J., concur.