THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. RICHARD A. BAILEY, Respondent-Appellant.

Third District    No. 3—92—1011

Opinion filed August 17, 1994.—Rehearing denied September 26, 1994.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Danner, State's Attorney, of Lewistown (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

The circuit court of Fulton County found the respondent, Richard A. Bailey, to be a sexually dangerous person and ordered him to be confined in the Illinois Department of Corrections (IDOC) until found to be no longer sexually dangerous. He appeals the trial court's order. We reverse and remand because we find the respondent was denied his constitutional right to the effective assistance of counsel.

## FACTS

On June 29, 1989, the State filed an information against the respondent charging him with sexually molesting his minor daughter. The respondent was arrested and incarcerated in the Fulton County jail until December 4, 1989, when he was released after posting bond.

On July 24, 1989, the State filed a petition under the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1991, ch. 38, par. 105 et seq.) (the Act) asking the court to find the respondent to be a sexually dangerous person. On September 19, 1989, the trial court appointed two psychiatrists, Dr. Robert Chapman and Dr. Richard Grant, to examine the respondent and render opinions with regard to his sexual dangerousness. Chapman conducted his interview and evaluation of the respondent on September 25, 1989. Grant examined and interviewed the respondent on October 20, 1989.

Due to discovery, defense counsel substitutions, and other pretrial matters, the trial of the case was delayed for nearly three years. In the meantime, the respondent's counsel procured two additional psychiatrists to interview and evaluate the respondent for sexual dangerousness. Dr. Mortimer Beck examined the defendant in January 1990, and Dr. Ian Kling conducted his evaluation in March 1992.

On May 22, 1992, the State filed a motion asking the court for leave to have Chapman and Grant reexamine the respondent. At the hearing on the State's motion on May 26, 1992, defense counsel opposed the motion. Defense counsel said a psychiatric reexamination of the respondent on the eve of trial would result in further delay and would probably necessitate further discovery. He also said there was no indication that the 1989 opinions and findings of Chapman and Grant were "invalid or no longer valid." As a result of defense counsel's remarks, the trial court denied the State's motion.

The case went to trial on June 2, 1992. Both Chapman and Grant said that, based upon their examinations in late 1989, the respondent was a sexually dangerous person. They both testified that the respondent had suffered from a mental disorder at the time he committed the offenses and continues to suffer from the same disorder. However, both Kling and Beck, who had conducted their evaluations later in time, testified that the respondent was not sexually dangerous and did not have a mental disorder.

After hearing the testimony of other witnesses, the trial court found the respondent to be a sexually dangerous person on November 9, 1992. The court based its ruling upon the reports and testimony of Grant and Chapman. In his findings, the trial judge said he was displeased with the lengthy delay in litigating the case. The judge also noted the respondent's unblemished record and good conduct during the time he was released on bond. At the time the court entered its findings, the respondent had been free on bond for nearly three years. Based on the Act, the court committed the respondent to IDOC for an indefinite period. The court stayed enforcement of its order while it considered the respondent's post-trial motion and motion for an appeal bond.

On December 21, 1992, the court denied the respondent's posttrial motion. The respondent filed a timely notice of appeal on December 30, 1992. The court granted the respondent's motion for an appeal bond on January 4, 1993. The court granted the bond based on the respondent's good conduct during the pendency of the petition and his current gainful employment. The court set the appeal bond at the same amount the respondent posted prior to trial.

## DISCUSSION AND ANALYSIS

Due to the potential loss of personal liberty the Act imposes upon individuals adjudged to be sexually dangerous, we find the respondent had a right to the effective assistance of counsel under the sixth amendment to the Constitution of the United States.

We also find that the Act requires the trial court to make its finding of sexual dangerousness as of the date of its decision. Our holding mandates an inquiry by the trial court into the recency of the psychiatric examinations upon which the court's decision is based, as well as the respondent's behavior during the pendency of the petition.

Based upon these precepts, we conclude the respondent was denied his constitutional right to the effective assistance of counsel when his lawyer opposed the State's motion to have the court's psychiatrists reexamine the respondent.

We note that the issues we have considered in this appeal were not properly preserved for review. However, because the error was of such magnitude as to deny the respondent a fair trial, we invoke the plain error rule in order to preserve justice. See *People v. Speight* (1992), 153 Ill. 2d 365, 379-80, 606 N.E.2d 1174, 1180; *People v. Dunsworth* (1992), 233 Ill. App. 3d 258, 269-70, 599 N.E.2d 29, 37.

## I. SIXTH AMENDMENT RIGHT TO COUNSEL

Though the Act confers upon the respondent a statutory right to representation by counsel (Ill. Rev. Stat. 1991, ch. 38, par. 105—5), we must first consider whether a constitutional right to counsel attaches to proceedings under the Act. We answer this question in the affirmative.

The Constitution guarantees an accused in a criminal prosecution the right to an attorney. (U.S. Const., amend. VI.) However, the particular proceeding need not be criminal in nature to trigger a right to counsel. Rather, the decisive inquiry is whether the litigant stands to lose some measure of personal liberty as a consequence of defeat in the proceeding. (*Lassiter v. Department of Social Services* (1981), 452 U.S. 18, 25, 68 L. Ed. 2d 640, 648, 101 S. Ct. 2153, 2158-59; *In re Application of Gault* (1967), 387 U.S. 1, 36, 18 L. Ed. 2d 527, 551, 87 S. Ct. 1428, 1448.) A litigant's right to counsel bears a direct relationship to the personal liberty interests at stake in the litigation. (*Lassiter*, 452 U.S. at 26, 68 L. Ed. 2d at 649, 101 S. Ct. at 2159.) A respondent named in a petition under the Act must be accorded the essential protections available in a criminal trial due to the potential loss of liberty attendant to proceedings under the Act. *People v. Olmstead* (1965), 32 Ill. 2d 306, 309, 205 N.E.2d 625, 627.

●1 Here, proceedings under the Act are civil in nature. (Ill. Rev. Stat. 1991, ch. 38, par. 105—3.01.) However, a person who is found to be sexually dangerous is committed to IDOC until his or her recovery. (Ill. Rev. Stat. 1991, ch. 38, par. 105—8.) The person must remain confined until a court determines that he or she has recovered and is no longer sexually dangerous. (Ill. Rev. Stat. 1991, ch. 38, par. 105—9.) The Act provides for indefinite incarceration and an obvious loss of liberty. For this reason, the respondent has a crucial liberty interest in the outcome of the proceeding. Accordingly, we conclude that a sixth amendment right to counsel attaches to proceedings under the Act.

## II. DETERMINATION OF SEXUAL DANGEROUSNESS AS OF THE DATE OF THE TRIAL COURT'S DECISION

The respondent contends the trial court erred in ignoring his good conduct during the pendency of the petition. He also claims that the delay in hearing the petition should have been considered by the trial court in reaching a decision on his sexual dangerousness. We agree with the respondent.

The Act defines "sexually dangerous person" as "[a]ll persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition." (Ill. Rev. Stat. 1991, ch. 38, par. 105—1.01.) Section 4 of the Act requires two psychiatrists to "ascertain whether such person *is* sexually dangerous." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 38, par. 105—4.

In *People v. Sly* (1980), 82 Ill. App. 3d 742, 403 N.E.2d 72, and *People v. Studdard* (1980), 82 Ill. App. 3d 736, 403 N.E.2d 68, the Second District Appellate Court reversed judgments in which the trial courts found the respondents to be sexually dangerous based on psychiatric reports filed more than 10 years prior to those judgments. For example, in *Sly*, the respondent was originally found to be sexually dangerous pursuant to the Act in 1966. In 1975, a Federal court of appeals invalidated sexual dangerousness findings made under standards less stringent than the standard of beyond a reasonable doubt. (See *United States ex rel. Stachulak v. Coughlin* (7th Cir. 1975), 520 F.2d 931, 935-36.) In 1977, a Federal district court vacated Sly's commitment and ordered a new hearing. As a result, Sly was retried under the original petition. The trial court denied Sly's request to admit evidence of his current mental condition. Instead, the court again found Sly to be sexually dangerous based upon the original proof and psychiatric reports filed in 1966. The appellate court reversed, holding that the Act referred to *present* mental

conditions and not to conditions which may have existed in the past. Confining a person on the basis of past dangerous behavior without ascertaining his present mental condition does not serve the Act's purposes. The purpose of the Act is to protect the public, not to punish the offender. Finally, the appellate court noted the futility of confining a person for treatment when he or she may not need such treatment. *Sly*, 82 Ill. App. 3d at 746-47, 403 N.E.2d at 75-76; *Studdard*, 82 Ill. App. 3d at 740, 403 N.E.2d at 71.

A respondent's behavior during a petition's pendency can also be an important factor in a sexual dangerousness determination. In *People v. Howell* (1956), 12 Ill. App. 2d 84, 138 N.E.2d 691, the respondent was arrested and charged with indecent exposure. Howell was never convicted of the offense. Subsequently, the State filed a sexual dangerousness petition against Howell. For approximately four months, he was incarcerated in a county jail with numerous other inmates. During Howell's trial, a deputy sheriff testified he observed Howell's behavior with other inmates and saw no misconduct or inappropriate behavior. Also, the record contained no reports from other county jail staff or inmates concerning any misconduct on Howell's part. The appellate court reversed the trial court's determination of sexual dangerousness. In its decision, the *Howell* court relied in part on the deputy sheriff's testimony in finding the trial court's decision was against the manifest weight of the evidence. *Howell*, 12 Ill. App. 2d at 90-92, 138 N.E.2d at 694-95.

●2 Based on our reading of the Act and the principles expressed in *Sly*, *Studdard*, and *Howell*, we conclude the trial court must determine whether the respondent is sexually dangerous on the date of its decision. We also find that the passage of time while a petition remains pending, the respondent's behavior during that time, and the remoteness in time of the psychiatrist's report are all important factors to be considered by the trial court when it determines beyond a reasonable doubt whether a person is sexually dangerous under the Act.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, we must determine whether the respondent was denied the effective assistance of counsel. We have already concluded that persons named in a petition under the Act have a constitutional right to counsel. The right to counsel essentially means a right to the effective assistance of counsel. (*Strickland v. Washington* (1984), 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063.) A claim for ineffective counsel must meet both of the following criteria: (1) the attorney's performance must have been deficient or below an

objective standard of reasonableness; and (2) the existence of a reasonable probability that the result of the proceeding would have been different but for the attorney's errors. (*People v. Winsett* (1992), 153 Ill. 2d 335, 347, 606 N.E.2d 1186, 1193.) The inquiry into counsel's performance requires an evaluation which considers all of the circumstances which occur during counsel's representation. *People v. Cord* (1993), 239 Ill. App. 3d 960, 966-67, 607 N.E.2d 574, 578.

The Act and the cases which we have cited require the trial court to determine the respondent's sexual dangerousness using evidence which demonstrates the existence of that mental condition on the date of the court's decision. The evaluations of Chapman and Grant, on which the trial court based its decision of sexual dangerousness, were over $2^1/2$ years old when defense counsel opposed the State's motion. Also, the respondent had been free on bond for more than $2^1/2$ years. The record is replete with references to the respondent's good behavior during that period of time. The record contains *no* evidence of any sexual misconduct on the respondent's part during the pendency of the petition.

●3 Based on these facts, we find defense counsel's performance was deficient when he opposed the State's motion for reexamination. The remoteness of the reports by Chapman and Grant, coupled with the respondent's good behavior while free on bond, should have indicated to defense counsel that any mental condition existing on the dates of the initial psychiatric examinations could have changed over the passage of time. Moreover, it should have been apparent to defense counsel that a more recent examination of the respondent by the court's psychiatrists could cause them to reconsider their original diagnoses of sexual dangerousness.

Following our careful review of the record, we find a reasonable probability that the ultimate result in this case would have been different had the court's psychiatrists reexamined the respondent. The court's psychiatrists could well have altered their original evaluations of the respondent based upon his good behavior over the passage of time following their examinations in 1989. Also, the trial court certainly would have given greater weight to more recent psychiatric reports when it made its decision. Accordingly, we conclude the respondent was denied the effective assistance of counsel.

## CONCLUSION

The judgment is reversed and the cause is remanded to the circuit court of Fulton County for a determination of the respondent's current mental condition. The court is directed to conduct further proceedings in a manner consistent with this opinion. In light of our holding, we decline to address the other issues raised in this appeal.

Reversed and remanded with directions.

SLATER, P.J., and STOUDER, J., concur.