2015 IL App (3d) 140497

Opinion filed October 1, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Iroquois County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-14-0497 Circuit No. 06-CF-138 |
| CHRISTOPHER BAILEY, | ) ) | Honorable Gordon L. Lustfeldt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Wright concurred in the judgment and opinion.
Justice Schmidt concurring in part, dissenting in part, with opinion.

**OPINION**

¶ 1        On May 29, 2012, defendant, Christopher Bailey, having been found a sexually dangerous person (SDP) in 2007, filed a *pro se* petition alleging recovery (725 ILCS 205/9(a), (e) (West 2012)).  Following a bench trial, the court found that defendant remained an SDP.  On appeal, defendant argues that the trial court, in finding that he remained an SDP, failed to find that he was substantially probable to sexually reoffend if not confined, as required by *People v. Masterson*, 207 Ill. 2d 305, 330 (2003).  We vacate the trial court's ruling and remand for a new hearing on defendant's recovery petition.

¶ 2                                                    FACTS

¶ 3          In 2007, defendant was determined to be an SDP. The trial court appointed the Director

of the Department of Corrections as the guardian of defendant and committed defendant to the

Department of Corrections for an indefinite period for treatment. On appeal, this court affirmed

the trial court's ruling that defendant was an SDP. *People v. Bailey*, 405 Ill. App. 3d 154 (2010).

¶ 4          On May 29, 2012, defendant filed a *pro se* petition alleging recovery (725 ILCS 205/9

(West 2012)). The matter proceeded to a bench trial held on November 14, 2013. At trial, a

sociopsychiatric evaluation report, performed pursuant to the Sexually Dangerous Persons Act

(Act) (725 ILCS 205/9(a) (West 2012)), was entered into evidence. The report was dated April

17, 2013, and was compiled by Dr. Kristopher Clounch, a licensed psychologist; Dr. N.

Vallabhaneni, a board certified psychiatrist; and Dale Spitler, a licensed clinical social worker.

Clounch, the primary author of the report, also testified for the State. The report indicated that

defendant had not made sufficient progress in sexual offender treatment and was in need of

improvement in most of the areas of evaluation. Defendant received a score of 7 on the Static-

99R instrument, placing him in the high-risk category. Offenders with that score have been

found to sexually reoffend at a rate of 5.25 times that of an average sex offender. The report also

indicated defendant had been found in possession of pornographic or sexually arousing materials

on a number of occasions while in prison.

¶ 5          Clounch testified that, in his opinion, defendant remained an SDP. Defendant testified on

his own behalf, and acknowledged having acquired pornographic materials that he knew he was

not permitted to have while in prison.

¶ 6          The court found that defendant remained an SDP. The court stated as follows:

                                                          2

"I have considered the report that was prepared. I'm required by law to consider it and I've considered all the evidence that was presented. I think the report speaks for itself. It is fairly clear that there has been no progress and that [defendant] is still sexually dangerous.

Now, the sexually dangerous person is, of course, a form of mental diagnosis or disorder that is set by state law. You have to have a mental disease or disorder in order to be sexually dangerous. Those things are the nature where they don't heal themselves like when you cut your leg and it heals up on its own. Those things are by nature the kind of things that require treatment, intensive treatment over a period of time to get better. And under the sexually dangerous persons law if a person avails himself of that treatment and makes progress then he can be released if he meets a certain goal.

*** Even in your own testimony, [defendant], you didn't describe or point to any progress that you made in therapy so I don't know how all the sudden you are not dangerous when there was a finding that you were dangerous and you had no treatment.

I understand [defense counsel's] contentions about the report. This is how most medical or psychological reports are done. By nature they rely on the hearsay statements and documents of other people and collect them together and make a report. But even if you take out the stuff that [defense counsel] complained about and just went with the interview between [defendant] and these 3 mental health professionals and looked at the Static-99, and I understand your

3

concerns about that, the only thing I can say is it is probably the most widely used test they got. ***

***

But on this record I can't make any finding other than to find that the State has proved by clear and convincing evidence that you remain sexually dangerous. There's been no, no progress in treatment, constant violations of all kinds and they might be minor, but violations nonetheless. And you are as the report states an intelligent man. You could do it if you wanted to and you haven't wanted to. That's the bottom line, I think."

The court did not enter a formal, written order, but entered into the record the following minutes: "Evidence and arguments heard. [T]he court finds that the State has meet [*sic*] its burden of proof and that by clear and convincing evidence, the defendant is found to still be sexually dangerous and is ordered remained committed for further treatment."

¶ 7 Defendant subsequently filed a motion to reconsider, in which he argued that the State's evidence was insufficient to prove by clear and convincing evidence that he remained an SDP. The trial court denied the motion and stated as follows:

"[T]he real significance for me is the fact that some of the things that he is alleged to have violated while he was in IDOC would have been violations if he had been on conditional release. Well, if you can't behave yourself in prison where there's no privacy and there's constant supervision then how is the court supposed to believe that you have regained the necessary amount of self control that it would take to be on conditional release or simply to be released out in the community free?"

4

¶ 8                                  ANALYSIS

¶ 9         On appeal, defendant argues that the trial court failed to make an explicit finding that he was substantially probable to sexually reoffend if not confined, as required by *Masterson*, 207 Ill. 2d at 330. On this basis, defendant contends that the trial court's order that he remain committed for further treatment should be reversed outright. Defendant also argues that the evidence presented by the State was insufficient to prove by clear and convincing evidence that he remained an SDP.

¶ 10        The State, in response, posits that the trial court did make a finding that defendant was substantially probable to sexually reoffend if not committed. Specifically, the State contends that the trial court's comments upon denial of defendant's motion to reconsider satisfied the *Masterson* requirement. Alternatively, the State argues that any error the trial court committed in failing to make the *Masterson* finding does not mandate reversal. For the reasons set forth below, we find that the trial court failed to comply with our supreme court's clear rule set forth in *Masterson*. Further, we find that the proper remedy for such a failure is *vacatur* of the trial court's order that defendant remain committed and remand for a full rehearing on defendant's recovery petition.

¶ 11                         I. The *Masterson* Requirement

¶ 12        In recovery proceedings under the Act, it is the State's burden to prove, by clear and convincing evidence, that the defendant remains an SDP. 725 ILCS 205/9(b) (West 2012). The statutory elements of an SDP are: (1) a mental disorder existing for at least one year prior to the filing of the petition; (2) criminal propensities to the commission of sex offenses; and (3) demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children. 725 ILCS 205/1.01 (West 2012); *People v. Bingham*, 2014 IL 115964, ¶ 27.

¶ 13    In *Masterson*, 207 Ill. 2d at 330, our supreme court held that a finding of sexual dangerousness must "be accompanied by an explicit finding that it is 'substantially probable' the person subject to the commitment proceeding will engage in the commission of sex offenses in the future if not confined." The court has recently rejected the argument that this requirement may be satisfied when the evidence adduced would be sufficient to support such a finding, reiterating that "*Masterson* plainly requires an *explicit* finding***." (Emphasis added.) *Bingham*, 2014 IL 115964, ¶ 35.

¶ 14    Though *Masterson* and *Bingham* each arose in the context of a commitment proceeding, in which a defendant is declared sexually dangerous for the first time, the Act does not redefine SDP for the purposes of the recovery hearing. See 725 ILCS 205/9 (West 2012). Indeed, the requirement that a trial court make such an explicit finding has been applied in recovery proceedings. See, *e.g.*, *People v. Donath*, 2013 IL App (3d) 120251.

¶ 15    In the present case, the trial court clearly made no explicit finding that there was a substantial probability defendant would engage in the commission of sex offenses in the future if not confined. We reject the State's contention that the trial court's comments upon the denial of defendant's motion for reconsideration were sufficient to constitute such a finding.

¶ 16    Initially, we note that our supreme court has been quite clear in requiring that the *Masterson* finding be "explicit." *Masterson*, 207 Ill. 2d at 330; *Bingham*, 2014 IL 115964, ¶ 35. Such a finding is plainly *not* explicit where it requires this court to engage in interpretation of the trial court's intention, as the State suggests we do here. Further, we would note that the *Masterson* court requires that the substantial probability finding "accompan[y]" a finding of sexual dangerousness. *Masterson*, 207 Ill. 2d at 330. Here, the trial court's comments were made days after its original finding.

6

¶ 17 Even if we were to engage in the State's suggested analysis, we could not find that the trial court's comments amount to a finding that there was a substantial probability defendant would engage in the commission of sex offenses in the future if not confined. The court's comments[1] make no reference to a "substantial probability" that defendant might reoffend, but merely indicate the court's doubts concerning defendant's self-control. The supreme court has found that a substantial probability of committing sex offenses in the future if not confined means that it is " 'much more likely than not' " (*In re Detention of Hayes,* 321 Ill. App. 3d 178, 189 (2001) (quoting *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 1086 (2000))) that the subject will commit offenses in the future, not just that the subject has some condition affecting volitional capacity. Indeed, the court in *Masterson* clearly considered volitional impairment and the "substantially probable" finding to be two separate requirements for civil commitment. *Masterson*, 207 Ill. 2d at 328-29. The trial court's comments in the case at hand gave no indication that it found defendant "much more likely than not" to commit sex offenses if not confined, and was far too vague to satisfy the *Masterson* requirement.

¶ 18                                        II. Remedy

¶ 19 Having found that the trial court failed to make the mandatory *Masterson* finding, we must next decide the proper remedy for such a failure. Though defendant urges that we outright reverse the order of the trial court, and the State suggests that we may take no action at all,

---

[1] "Well, if you can't behave yourself in prison where there's no privacy and there's constant supervision then how is the court supposed to believe that you have regained the necessary amount of self control that it would take to be on conditional release or simply to be released out in the community free?"

7

neither party is able to cite any authority in supports of its position. Indeed, it appears that the present matter is one of first impression for this or any other reviewing court in Illinois.

¶ 20    At the outset of our analysis, we recognize that our supreme court in *Bingham*, while reaffirming the mandate of *Masterson*, affirmed the appellate court's reversal of a finding of sexual dangerousness. *Bingham*, 2014 IL 115964, ¶ 35. However, because the supreme court found the evidence in general had been insufficient for the trial court to find the defendant sexually dangerous, it "need[ed] not determine whether the lack of an explicit finding alone constitutes reversible error." *Id.* Accordingly, the issue of a remedy for the lack of an explicit finding, absent other errors, remains unresolved.[2]

¶ 21    We hold that a trial court's failure to make a finding that there was a substantial probability defendant would engage in the commission of sex offenses in the future if not confined may not amount to harmless error. Our supreme court has held on multiple occasions that a finding of sexual dangerousness *must* be accompanied by a substantial probability finding. *Masterson*, 207 Ill. 2d at 330; *Bingham*, 2014 IL 115964, ¶ 35. The court has explicitly rejected

---

[2] Though defendant here does proffer an insufficiency of the evidence argument, the lone contention within that argument is that "the State failed to prove by clear and convincing evidence that [defendant] will probably engage in the commission of sex offenses in the future if not confined." We interpret defendant's argument as an argument in the alternative. In other words, defendant argues primarily that the trial court made no finding on substantial probability to reoffend; in the alternative, he argues that to the extent the court *did* make such a finding, it was erroneous. Because we find that the trial court made no such finding, it would be inappropriate for this court to weigh the evidence for a first time and determine whether it was sufficient to support such a finding.

8

the position the failure of a court to make that finding is cured where the evidence at trial would have supported the finding. *Id.* To find that such an error is harmless would be to completely ignore the supreme court's opinions in *Masterson* and *Bingham.* A rule with no remedy would be no rule at all.

¶ 22 Though such an error may not be harmless, it does not follow that the error must result in an outright reversal of the trial court's order, as defendant here suggests. At this point in the analysis, we do find it relevant that defendant is presently civilly committed, and seeking his release via a recovery petition. He has already been through initial civil commitment proceedings, and had been adjudicated an SDP. See *Bailey*, 405 Ill. App. 3d at 155-56. An outright reversal would result in defendant's immediate release. However, the Act contains a number of procedures and guidelines for the release of a former SDP pursuant to a recovery petition. 725 ILCS 205/9(e), 10 (West 2012). Release pursuant to an outright reversal may have the unintended effect of bypassing these statutory guidelines. More broadly, we doubt the supreme court, in adopting the *Masterson* rule, contemplated that outright reversal would be the proper remedy for violation of that rule. Indeed, in setting forth the rule originally, the court remanded the matter so that the trial court may apply it upon rehearing. *Masterson*, 207 Ill. 2d at 330. Accordingly, we vacate the trial court's order and remand the matter for rehearing on defendant's recovery petition.

¶ 23 Finally, we find it necessary to point out that the hearing on remand should be a full hearing on the merits of defendant's recovery petition, rather than on the sole issue of defendant's probability to reoffend. This result is dictated by the Act. See 725 ILCS 205/9(b) (West 2012); *Masterson*, 207 Ill. 2d at 330. Because the trial court's finding that defendant remained sexually dangerous was not accompanied by the required *Masterson* finding, its order was invalid under

9

the Act. See *Masterson*, 207 Ill. 2d at 330 (clarifying that substantial probability finding is an "implicit requirement" of the Act). The court's order having been vacated by this court, defendant's recovery petition remains unresolved. The Act provides that pursuant to recovery proceedings, "[t]he State has the burden of proving by clear and convincing evidence that the applicant is *still* [an SDP]." (Emphasis added.) 725 ILCS 205/9(b) (West 2012).

¶ 24    Numerous courts have held that the elements of SDP under the Act refer to *present* mental conditions, rather that conditions that may have existed in the past. See, *e.g.*, *People v. Bailey*, 265 Ill. App. 3d 758 (1994). In *People v. Sly*, 82 Ill. App. 3d 742 (1980), for example, the defendant, on remand, was retried under the original petition and found to be sexually dangerous. The appellate court reversed, finding that the 10-year-old psychiatric evaluation did not speak to whether he was *presently* a sexually dangerous person. *Id*. at 747. Consequently, we have found that a trial court must determine whether a defendant is sexually dangerous *on the date of its decision*. *Bailey*, 265 Ill. App. 3d at 763. We agree with the dissent that the State may opt to stand on its original evidence—including the sociopsychiatric evaluation report from April of 2013—if it so chooses. However, as that evidence will be approaching three years old by the time of rehearing, we must caution that "the remoteness in time of the psychiatrist's report [is an] important factor[] to be considered by the trial court" when it determines whether a person is sexually dangerous under the Act. *Id*.

¶ 25    A full rehearing is also the most desirable of the other possible options. Remand so that the trial court could simply make the required finding would amount to mere formality, and would undermine the purpose of the rule set out in *Masterson*. Similarly, rehearing on the sole issue of probability to reoffend, should the trial court find defendant substantially probable to reoffend, would circumvent *Masterson*'s requirement that a substantial probability finding

10

"accompan[y]" a civil commitment order. *Masterson*, 207 Ill. 2d at 330. Accordingly we find *vacatur* of the trial court's order and remand for a full rehearing to be the proper remedy.

¶ 26                                                    CONCLUSION

¶ 27        The judgment of the circuit court of Iroquois County is vacated and the cause is remanded with instructions.

¶ 28        Vacated; cause remanded with instructions.

¶ 29        JUSTICE SCHMIDT, concurring in part and dissenting in part.

¶ 30        I agree that the failure to include the required specific language requires remand. However, on remand the parties should be given the opportunity to offer any new evidence and argument, then the trial court should decide the case. If the court finds that defendant is sexually dangerous, it must include a finding of a substantial probability to reoffend. I do not agree that the two findings are separate issues.

¶ 31        If there is no substantial probability to reoffend, then defendant is not sexually dangerous. A person is a SDP because he or she has a substantial probability to reoffend. The supreme court requires the explicit language to make sure that the trial court fully considers what is necessary to find one a SDP.

¶ 32        I do not think the hearing necessarily needs to start again from square one. The evidence has been presented. Again, the parties should have the opportunity to offer any new evidence. The majority holds that a "full rehearing is also the most desirable of the other possible options." *Supra* ¶ 25. I believe that the majority construes the "past" and "present" terms too literally. Every hearing on a SDP involves "past" conduct. It seems unlikely that all the evaluations, interviews, *et cetera*, could take place on the day of trial. If the trial court denies defendant's release based upon the evidence and makes the required findings, defendant is not barred from

11

bringing another petition in the future should he have new evidence to support his claims that he is no longer sexually dangerous.