2016 IL App (4th) 150617

NO. 4-15-0617

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | McLean County |
| JOHN N. GUTHRIE, | ) | No. 93CF505 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Rebecca Simmons Foley, |
| | ) | Judge Presiding. |

JUSTICE POPE delivered the judgment of the court, with opinion.
Justice Harris specially concurred in the judgment, with opinion.
Justice Steigmann dissented, with opinion.

**OPINION**

¶ 1       In February 1995, the trial court declared defendant, John N. Guthrie, a sexually dangerous person (SDP) and committed him to the custody of the Director of Corrections pursuant to the Sexually Dangerous Persons Act (Act) (725 ILCS 205/.01 to 12 (West 1994)).

¶ 2       In December 2013, defendant filed a motion the trial court construed as an application for recovery. In January 2015, an evaluator filed a socio-psychiatric report, concluding under the Diagnostic and Statistical Manual of Mental Health Disorders, Fifth Edition (DSM-V), defendant no longer qualified for a diagnosis of pedophilic disorder and therefore was no longer an SDP. After a May 2015 bench trial, the court found the State had failed to prove by clear and convincing evidence defendant remained an SDP. The court therefore ordered defendant to be discharged, rejecting the State's argument defendant should be conditionally released.

¶ 3       For the reasons that follow, we affirm the trial court's order discharging defend-

ant.

¶ 4                                    I. BACKGROUND

¶ 5                            A. Proceedings Prior to This Case

¶ 6         In June 1993, the State charged defendant with aggravated criminal sexual assault (720 ILCS 5/12-14 (West 1992)), alleging, when defendant was 15 years old, he digitally penetrated the anus of his 5-year-old stepsister. In August 1994, the State filed a petition to declare defendant an SDP under the Act. In a February 1995 written order, the trial court declared defendant an SDP pursuant to section 1.01 of the Act (725 ILCS 205/1.01 (West 1994)) and ordered him committed to the custody of the Director of Corrections.

¶ 7         In the subsequent years, defendant filed several applications for recovery pursuant to section 9(a) of the Act (725 ILCS 205/9(a) (West 2014)). We provide a brief synopsis of those filings and their resolutions to place defendant's claims in their proper context.

¶ 8         In June 1995, defendant *pro se* filed his first application for recovery. The trial court denied that application in July 1996. In January 1998, defendant *pro se* filed his second application for recovery. Dr. Larry Davis testified defendant did not meet the criteria for pedophilia and had no propensity to reoffend. *People v. Guthrie*, No. 4-99-0226, slip order at 3 (Apr. 10, 2000) (unpublished order under Supreme Court Rule 23). In February 1999, the trial court denied that application. On appeal, this court affirmed the trial court's judgment. *Id.* In July 1999, defendant *pro se* filed a third application for recovery, which was never addressed by the trial court or the parties. In July 2000, defendant *pro se* filed a fourth application for recovery, which the trial court dismissed without prejudice. In June 2001, defendant filed a fifth application for recovery. Prior to trial, the State filed a motion *in limine* to exclude evidence defendant had been misdiagnosed, which the trial court granted. In July 2002, a jury found defendant re-

mained sexually dangerous.  Defendant initially appealed that decision but later withdrew his appeal.  *People v. Guthrie*, No. 4-02-0860 (Jan. 16, 2003) (unpublished dispositional order dismissing the case on defendant's motion).

¶ 9        In October 2002, defendant *pro se* filed a sixth application for recovery.  In April 2004, the trial court found the State had failed to meet its burden of proving defendant remained an SDP.

¶ 10       At the hearing on this petition, Dr. Robert Chapman, who had originally diagnosed defendant as an SDP, testified he had since examined defendant in 2003 and 2004.  Dr. Chapman opined defendant did not currently meet the criteria for being an SDP.  He diagnosed defendant with a personality disorder, not otherwise specified, with antisocial features.  Dr. Chapman further testified his original diagnosis of pedophilia was in error, and defendant did not suffer from a mental disorder, but was antisocial and opportunistic when he committed the assaults.  The trial court found it was impossible to determine with certainty under conditions of institutional care if defendant had fully recovered.  As a result, the court ordered defendant's conditional release.  725 ILCS 205/9 (West 2002).  In September 2004, the State filed a petition to revoke defendant's conditional release, alleging defendant had violated various conditions of his release, including (1) failing to comply with sex offender treatment rules, (2) failing to register as a sex offender, and (3) entering the pornography section of a video store.  Defendant admitted the allegations of the petition and agreed to have his conditional release revoked and be remanded to the Department of Corrections (DOC).

¶ 11       In March 2006, defendant *pro se* filed a seventh application for recovery.  In June 2009, a jury found defendant was still sexually dangerous.  Defendant initially appealed that decision but later withdrew his appeal.  *People v. Guthrie*, No. 4-09-0646 (July 22, 2010) (un-

published dispositional order dismissing the case on defendant's motion). At the trial, the State's witnesses, Dr. Angeline Stanislaus and Dr. Mark Carich, testified defendant remained an SDP. Dr. Terry Killian, an expert for defendant, testified he evaluated defendant in December 2008. Dr. Killian stated defendant was not sexually dangerous and there was no evidence defendant had a substantial probability of reoffending.

¶ 12               B. Proceedings on the Current Application for Recovery

¶ 13         In June 2010, defendant *pro se* filed an eighth application for recovery. The application asked the trial court to either find defendant (1) was not "sexually dangerous" and order defendant's discharge from DOC or (2) "appears no longer sexually dangerous *** but that it is impossible to determine with certainty under conditions of institutional care that he has fully recovered" and order defendant's conditional release.

¶ 14         In September 2012, a jury found defendant was still an SDP. In July 2013, this court reversed that judgment and remanded for a new trial because the trial court had improperly barred the testimony of defendant's expert witness, Dr. Killian. *People v. Guthrie*, 2013 IL App (4th) 130066-U. We found, under amendments to the Act, the State had the burden of proving by clear and convincing evidence defendant was still an SDP. *Id.* ¶ 38; 725 ILCS 205/9(b) (West 2010). See also *People v. Grant*, 2016 IL 119162, ¶ 22.

¶ 15         On remand, in December 2013, defendant filed a motion for a mental health evaluation. In May 2014, the trial court construed that motion as an application for recovery and ordered the State to prepare a socio-psychiatric report.

¶ 16               1. *The State's Socio-Psychiatric Report*

¶ 17         In January 2015, the State filed the socio-psychiatric report prepared by a licensed clinical psychologist, Melissa Weldon-Padera. (In the interest of brevity and in keeping with the

State's brief, we refer to Weldon-Padera simply as Padera.)  In preparing her report, Padera conducted a five-hour interview with defendant and considered the prior evaluations and reports conducted in his case.  Padera diagnosed defendant with the following: (1) insomnia disorder, recurrent; (2) adjustment disorder, with mixed anxiety and depressed mood; and (3) other specified personality disorder, antisocial and narcissistic traits.

¶ 18        However, Padera concluded defendant "does not qualify for a continued diagnosis of a mental disorder related to a propensity to sexually offend."  Padera explained defendant no longer met the criteria for a diagnosis of pedophilic disorder under the DSM-V.  Padera stated a diagnosis of pedophilic disorder requires the following three criteria:

> "(a) over a period of at least six months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger); (b) the individual has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty; and (c) the individual is at least age 16 years and at least five years older than the child or children."

Based on Padera's review of defendant's case history, Padera explained defendant had engaged in sexual activity one time with his five-year-old stepsister and for a period of five months with his nine-year-old half-sister.  The entirety of that activity occurred when defendant was 15 years old.  In addition, Padera found defendant reported having sexual fantasies about his nine-year-old half-sister from when defendant was 15 years old until he was 23 years old.  However, defendant denied having any significant distress or interpersonal difficulty as a result of his fantasies.  Defendant is currently 38 years old.

¶ 19        Based on the criteria established by the DSM-V, Padera concluded defendant did not qualify for a diagnosis of pedophilic disorder.  Padera explained defendant's sexual activity with children lasted only five months, falling short of the six-month period required by the DSM-V.  In addition, although defendant experienced sexual fantasies involving children for a period of at least six months, those fantasies did not cause defendant marked distress or interpersonal difficulty.  As a result, Padera concluded a diagnosis of pedophilic disorder was not appropriate.

¶ 20        Padera concluded, because defendant no longer suffered from a mental disorder related to a propensity to commit sex offenses, defendant "is considered to be no longer sexually dangerous as defined in [the Act] and, therefore, does not need to remain in an institutional setting."  Padera recommended defendant be conditionally released from DOC.

¶ 21                              2. *The Bench Trial*

¶ 22        In May 2015, a bench trial was held on defendant's application for recovery.  Prior to the start of trial, the State explained it agreed with Padera's opinion defendant "fits recovery" and, therefore, the trial should be limited to determining what conditions to place on defendant's conditional release under section 10 of the Act (725 ILCS 205/10 (West 2014)).  (In actuality, section 10 of the Act applies to cases where the *Director* petitions for conditional release of an SDP.  Here, defendant petitioned for recovery; thus, section 10 does not apply.)  In response, defendant argued the purpose of the trial was to first determine whether he was still an SDP.  According to defendant, if the State failed to prove he was still an SDP, the Act mandated outright discharge, and the issue of conditional release was irrelevant.  The trial court did not resolve this dispute between the parties before starting the trial.

¶ 23        The parties stipulated to the admission of Padera's report, and the trial court ad-

mitted it into evidence.

¶ 24    Padera testified the three diagnoses she gave defendant did not relate to sexual urges, fantasies, or behavior and therefore were not paraphilic disorders. Padera explained, although defendant may have received a pedophilic disorder diagnosis in the past, the criteria had changed in the DSM-V, and defendant no longer met the applicable criteria. Padera went on to state, while incarcerated, defendant made good insight into his condition but had a poor history of participating in treatment. She testified:

> "[S]pecifically that he's no longer sexually dangerous within the institutional parameters, so, specifically, that he's a low risk; that he presented information during the evaluation with good insight into offending behavior that might trigger recidivism and that he has no diagnosis that he would need to recover from in the first place, so there's nothing for me to justify that he remain in a secured environment at this time."

Padera further testified, "And so, right now, he doesn't meet any of the criteria for having a disorder, according to DSM-V."

¶ 25    The State asked Padera whether she thought defendant was fully recovered. Padera responded with the following:

> "Well, it's hard to say whether he's recovered, because it's a moot point in my opinion. He doesn't meet any of the DSM-V criteria for a diagnosis or a condition for him to recover from, so recovery in this case is—it doesn't apply. It's my opinion that he's done everything he can in the intensive institutional program ***

- 7 -

and that there's nothing else that he can do there. So that's why I recommend the conditional release with continued sex offender treatment \*\*\*."

Further, Padera testified:

"[H]e has made sufficient progress in treatment to where he's done well enough and he's done all that he can in the program within the institution, that further confinement is no longer warranted or justified. So I can't say he's recovered from something that I don't believe he has a diagnosis to recover from."

When asked whether discharging defendant would be a danger, Padera responded, "I wouldn't say it's a danger, but it's obviously sort of irresponsible."

¶ 26 On cross-examination, Padera testified as follows:

"Q. \*\*\* [J]ust to clarify this, it is your opinion, based on a reasonable degree of psychologic [*sic*] certainty, based on all the things you examined in preparing your report, including your examination of [defendant], that he does not meet any of the diagnoses under DSM-V that would then fit into the statutory definition of [an SDP]?

A. Right.

Q. And, therefore, there's nothing from which to recover, since he doesn't fall into a diagnosis?

A. Right."

¶ 27 In July 2015, the trial court entered a thorough written order. Based on the testi-

mony of Padera, the court found the State had failed to meet its burden to prove defendant was still an SDP, noting Padera's report specifically stated, " 'At this time [defendant] does not qualify for a continued diagnosis of a mental disorder related to a propensity to offend' and 'there is no evidence to suggest that [defendant] has a sexual interest in or sexual preference for prepubescent children.' "  The court further found the following:

> "While [Padera] has recommended that [defendant] be released from [DOC] to conditional release, the court does not reach this part of the analysis[,] as [Padera] has acknowledged that [defendant] no longer meets the criteria for the [SDP] definition.  She has not testified that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered.  Rather, she testified that the issue of his recovery is moot, or does not apply, as he does not meet the relevant diagnosis criteria."

As a result, the court determined conditional discharge was not an available remedy.  The court granted defendant's application for recovery and ordered defendant discharged from DOC, pointing out Padera never testified it was impossible to determine with certainty under conditions of institutional care that such a person was fully recovered.

¶ 28          The State appeals.

¶ 29                              II. ANALYSIS

¶ 30          The State argues the trial court erred by ordering defendant discharged instead of conditionally released.  We disagree.

¶ 31                    A. The Lack of an Appellee's Brief

¶ 32          We note defendant has not filed an appellee's brief.  In *First Capitol Mortgage*

*Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976), our supreme court laid out the following rule for situations in which an appellee has not filed a brief:

> "We do not feel that a court of review should be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court. It may, however, if justice requires, do so. Also, it seems that if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal. In other cases if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record[,] the judgment of the trial court may be reversed."

In this case, we reach the merits of the appeal because the record is simple and we can decide the claimed error easily without the aid of an appellee's brief.

¶ 33                    B. Statutory Construction and the Standard of Review

¶ 34          The resolution of the issue before us requires us, in part, to engage in statutory construction of the Act. The cardinal rule of statutory construction is to determine and give effect to the intent of the legislature. *People v. Fiveash*, 2015 IL 117669, ¶ 11, 39 N.E.3d 924. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id.* When interpreting a statute, "we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it." *People v. Perry*, 224 Ill. 2d 312, 323, 864 N.E.2d 196, 204 (2007). Relevant parts of a statute should be construed as a whole so that no term is rendered superfluous or meaningless. *In re*

*Marriage of Kates*, 198 Ill. 2d 156, 163, 761 N.E.2d 153, 157 (2001). Courts should presume the legislature did not intend to create absurdity, inconvenience, or injustice. *In re D.D.*, 196 Ill. 2d 405, 418-19, 752 N.E.2d 1112, 1120 (2001). Issues of statutory construction are reviewed *de novo*. *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2014 IL 115526, ¶ 22, 6 N.E.3d 128.

¶ 35 Once we construe the statute *de novo*, we review the trial court's decision to discharge defendant under a manifest-weight-of-the-evidence standard. *People v. Donath*, 2013 IL App (3d) 120251, ¶ 38, 986 N.E.2d 1222. "A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent." *Id.*

¶ 36                                   C. The Language of the Act at Issue

¶ 37 A person who has been found sexually dangerous under the Act may file an application for recovery, seeking either discharge or conditional release from DOC (725 ILCS 205/9 (West 2014)). Such an application for recovery proceeds to a hearing, at which the State has the burden of proving by clear and convincing evidence that the applicant is still dangerous (725 ILCS 205/9(b) (West 2014)). Section 9(e) of the Act describes the possible remedies that might apply after a recovery hearing:

> "If the person is found to be no longer dangerous, the court shall
> order that he or she be discharged. If the court finds that the per-
> son appears no longer to be dangerous but that it is impossible to
> determine with certainty under conditions of institutional care that
> the person has fully recovered, the court shall enter an order per-
> mitting the person to go at large subject to the conditions and su-
> pervision by the Director as in the opinion of the court will ade-

quately protect the public." 725 ILCS 205/9(e) (West 2014).

¶ 38                                    D. The State's Argument

¶ 39        The State argues the trial court should have ordered defendant be conditionally released instead of discharged. In support of that argument, the State notes subsection 9(e) uses the term "dangerous" instead of "sexually dangerous." The State concludes the legislature's use of "dangerous" instead of "sexually dangerous" was intentional and subsection 9(e) must be construed according to the meaning of "dangerous." Under that interpretation of the Act, discharge is not appropriate if the applicant is found merely to be no longer *sexually* dangerous. Instead the applicant must be found to be no longer "dangerous" before the court can order discharge.

¶ 40        We reject the State's argument, as it would lead to absurd results. For example, a person committed under the Act might be an alcoholic or a thief. If released from confinement, a person could be dangerous, because he might commit a theft or drive under the influence of alcohol. This is not the type of danger the State may consider in determining to keep a person confined under the Act or in determining whether conditional release is appropriate.

¶ 41        Further, the language of the statute must be given its contextual meaning. When section 9(e) of the Act says, "If the person is found to be no longer dangerous, the court shall order that he or she be discharged" (*id.*) it means no longer *sexually* dangerous. After all, this is the *Sexually* Dangerous Persons Act, not the "Dangerous Persons Act." There is no definition of "dangerous" in the Act.

¶ 42        In this case, the trial court determined discharge was required because the court found defendant was no longer sexually dangerous. The only evidence before the court was Padera's report and her testimony.

¶ 43        Padera testified defendant's diagnoses no longer qualified him as sexually danger-

ous.  She testified he did not suffer from a mental disorder that predisposed him to sexually of-

fend, *i.e.*, he was not sexually dangerous.  The Act addresses present, not past, mental conditions

and considers whether a person is sexually dangerous on the date of the decision.  *People v. Bai-

ley*, 265 Ill. App. 3d 758, 763, 639 N.E.2d 1313, 1317 (1994); *People v. Sly*, 82 Ill. App. 3d 742,

747, 403 N.E.2d 72, 75 (1980).  A recovery application focuses on current conditions and exam-

ines whether the applicant meets the definition of "sexually dangerous person" at the time the

recovery application is decided.  There was absolutely no evidence before the court that would

support a finding it was impossible to determine with certainty under conditions of institutional

care that the person has fully recovered.  The trial court correctly determined it should discharge

defendant without conditions.  In other words, the court's findings were not against the manifest

weight of the evidence.

¶ 44                                    III. CONCLUSION

¶ 45            We affirm the trial court's judgment as it was not against the manifest weight of

the evidence.

¶ 46            Affirmed.

¶ 47          JUSTICE HARRIS, specially concurring.

¶ 48          I concur in this decision and agree we should reject the argument that "dangerous" in section 9(e) does not mean "sexually dangerous."  I write separately to point out that a person's discharge from DOC pursuant to section 9(e) depends on more than just whether the experts say he is no longer sexually dangerous.  Section 9(e) provides for two possible results in the event of such testimony.  The person could be discharged *or* he could be conditionally released if "it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered."  725 ILCS 205/9(e) (West 2014).

¶ 49          Here, Padera testified defendant was no longer sexually dangerous.  However, she also recommended he be conditionally released.  Defendant's attorney argued at the conclusion of the May 26, 2015, hearing as follows:  "Under [s]ection 9, you have to be a sexually danger-ous person before release can be conditioned.  If you are not a sexually dangerous person, you are discharged.  Those are the alternatives."  Counsel's statement that conditional release is avail-able to a person found to be still sexually dangerous is incorrect.  If, at the conclusion of the hearing, the fact finder determines the person is still sexually dangerous, his petition for dis-charge or conditional release must be denied.  Counsel's second statement, "[i]f you are not a sexually dangerous person, you are discharged" is correct as far as it goes.  However, whether the person *is* no longer sexually dangerous is determined by the fact finder, not a witness.  Simp-ly because an expert opines that the person is no longer sexually dangerous does not dictate the same conclusion must be reached by the fact finder, even if the opinion is unrebutted.  Instead, the fact finder is required to evaluate the entirety of the evidence and decide whether it is with a sense of assuredness (or as the statute reads, "with certainty"(*id.*)) that it can find the person *is* no longer sexually dangerous and thus should be discharged without restrictions, or rather if it *ap-*

*pears* he is no longer sexually dangerous but there remains a question whether he has fully recovered, and thus he should be released with conditions attached.

¶ 50 Here, the trial court stated in its decision: "While [Padera] has recommended that [defendant] be released from [DOC] to conditional release, *the court does not reach this part of the analysis*[,] as [Padera] has acknowledged that [defendant] no longer meets the criteria for the [SDP] definition." (Emphasis added.) In my view, simply because Padera opined defendant was no longer an SDP did not *ipso facto* dictate the court's conclusion he *was* no longer sexually dangerous such that he should be discharged from DOC. It appears the trial court considered its only option was to discharge defendant. Instead, as the fact finder, the trial court was required to decide, based on the evidence presented, whether it was satisfied that defendant was most assuredly no longer sexually dangerous, or whether a question remained as to whether he had not yet fully recovered. If the former, the court shall order discharge. If the latter, the court shall order conditional release.

¶ 51 In this case, there was no evidence that defendant had not "fully recovered." The trial court noted Padera did not testify that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered. Therefore, I agree discharge was appropriate. However, if evidence had been presented that defendant had not yet fully recovered, the trial court would have been required to consider the alternative of conditional release, notwithstanding Padera's opinion he was no longer sexually dangerous.

¶ 52        JUSTICE STEIGMANN, dissenting.

¶ 53        Because the statute at issue is arguably ambiguous, I sympathize with my distin-guished colleagues who have tried to figure out what it means in the context of this case. None-theless, because I disagree with their ultimate conclusion, I respectfully dissent.

¶ 54        Given the evidence before the trial court, the only issue the court had to address was whether the defendant should be conditionally released or fully discharged. Padera, the ex-amining clinical psychologist and the only expert to testify, concluded that defendant did not qualify for a continued diagnosis of a mental disorder related to a propensity to sexually offend. Nonetheless, she recommended that he be conditionally released with continued sex offender treatment. Her conclusion was apparently based upon her assessment, when asked whether dis-charging defendant would be a danger, that "I wouldn't say it's a danger, but it's obviously sort of irresponsible."

¶ 55        The State argues that the trial court should have ordered defendant to be condi-tionally released instead of discharged. In support of that argument, the State notes that subsec-tion 9(e) of the Act uses the term "dangerous" instead of "sexually dangerous." 725 ILCS 205/9(e) (West 2014). The State concludes that the legislature's use of "dangerous" instead of "sexually dangerous" was intentional and that subsection 9(e) must be construed according to the meaning of "dangerous." Under that interpretation of the Act, discharge is not appropriate if the applicant is found merely to be no longer *sexually* dangerous. Instead, the applicant must be found to be no longer "dangerous" before the court can order discharge.

¶ 56        The State is correct that by its plain language, section 9(e) of the Act contem-plates whether the applicant is "dangerous" and not whether he is *sexually* dangerous. Section 9(e) provides that the trial court shall order discharge if "the person is found to be no longer dan-

gerous." *Id.* Compare that language to the following other subsections of section 9 that refer to whether a person is "sexually dangerous": sections 9(a), 9(b), and 9(d) all refer to a "sexually dangerous person," and section 9(d) refers further to "a finding that the person is still sexually dangerous." 725 ILCS 205/9(a), (b), (d) (West 2014). Principles of statutory construction provide that "when the legislature includes particular language in one section of a statute but omits it in another section of the same act, courts presume that the legislature has acted intentionally and purposely in the inclusion or exclusion." *National City Mortgage v. Bergman*, 405 Ill. App. 3d 102, 109, 939 N.E.2d 1, 7 (2010). Under that principle of statutory construction, this court should presume that the legislature acted intentionally when it wrote section 9(e) to provide that a court shall order discharge only if the person is found to be no longer "dangerous."

¶ 57    Padera's testimony and the results of her report track closely the language of section 9(e), which provides that conditional release is mandated when the trial "court finds that the person appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that the person has fully recovered." 725 ILCS 205/9(e) (West 2014). In that situation, the Act instructs that the court "shall enter an order permitting the person to go at large subject to the conditions and supervision by the Director as in the opinion of the court will adequately protect the public." *Id.*

¶ 58    The question before this court is whether section 9(e), when it uses the term "dangerous," really means *sexually* dangerous. The majority concludes that "dangerous" in the context of this case surely means "sexually dangerous," not generally dangerous. *Supra* ¶¶ 39-41. The majority may be right as to what the legislature *meant*, but that is not what it *wrote*. Further, it strikes me as entirely reasonable for the legislature to authorize conditional release, instead of

- 17 -

outright discharge, for a defendant who might be "dangerous" in any fashion, not just sexually dangerous.

¶ 59        When construing statutes, as opposed to constitutional provisions, it is almost always a better practice to take the legislative language *as written* and not to assume that the legislature somehow overlooked something or meant something else.  This is almost always the better practice because the legislature, if we are wrong in construing the statute, can easily revisit the matter and fix the statute so it says what the legislature meant.  In fact, this is hardly hypothetical; over the last decade, the legislature in several instances has disagreed with a statutory interpretation by some court and then revised the statute accordingly.  One such instance was discussed in *Larsen v. Provena Hospitals*, 2015 IL App (4th) 140255, ¶ 33, 27 N.E.3d 1033 (analyzing *Szczerbaniuk v. Memorial Hospital for McHenry County*, 180 Ill. App. 3d 706, 536 N.E.2d 138 (1989), a case in which the legislature responded to an appellate court decision by amending the statute).

¶ 60        A court possesses greater flexibility when construing constitutional provisions because they are exponentially more difficult to revise if the construing court gets their meanings wrong.  Given that in this case we are construing a statute, we should hold the legislature to what it wrote.