**NOTICE**
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231389-U

NO. 4-23-1389

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 13, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| LEWIS SKINNER, | ) | No. 99CF700 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John M. Madonia, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Zenoff and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding the trial court did not err in concluding
defendant remained a sexually dangerous person.

¶ 2    In October 1999, defendant, Lewis Skinner, admitted to being a sexually
dangerous person under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/0.01 to 12
(West 1998)), and the trial court committed him to the custody of the Director of the Illinois
Department of Corrections (DOC) until such time as he was no longer a sexually dangerous
person.  In January 2023, defendant filed an application alleging recovery and seeking
conditional release or discharge.  The court denied defendant's application.

¶ 3    On appeal, defendant contends the trial court erred in denying his application for conditional release, arguing he presented compelling evidence he was not substantially probable to reoffend and confinement in a State mental hospital would be more appropriate. We affirm.

¶ 4                    I. BACKGROUND

¶ 5    On July 16, 1999, the State charged defendant with predatory criminal sexual assault and aggravated criminal sexual abuse of a victim under 13. On August 23, 1999, the State filed a petition to proceed under the Act. In October 1999, defendant admitted the State's petition, and the trial court ordered him committed to the custody of DOC. In July 2005, defendant filed an application alleging recovery. After a bench trial, the court determined defendant remained a sexually dangerous person.

¶ 6    In January 2023, defendant filed another application alleging recovery and requesting the trial court enter an order of discharge or conditional release. The court appointed counsel to represent defendant and ordered a psychological evaluation of defendant by Dr. Kristopher Clounch, a forensic psychologist. The court also granted a motion made by defendant's counsel to permit examination by an independent evaluator, Dr. Mark Carich. On November 7, 2023, a bench trial was held.

¶ 7    Clounch testified as an expert in conducting evaluations pursuant to the Act. Clounch explained the criteria for determining a person was sexually dangerous consisted of the following: (1) the person must have a mental disorder existing for longer than a year prior to the initial petition, (2) the disorder is coupled with criminal propensities to commit acts of sexual assault or molestation of children, and (3) the person must be substantially probable to reoffend in the future if not confined. Regarding defendant, Clounch reviewed defendant's records and evaluated and interviewed him.

¶ 8        During Clounch's interview with defendant, Clounch noted defendant appeared to understand the questions asked and provided appropriate answers. Although defendant had some difficulties with math skills and abstraction, he appeared to function well in the interview. Defendant had ongoing medical conditions due to high blood pressure, high cholesterol, coronary heart disease, and angina, and he used tear drops for his eyes. Clounch found nothing pertaining to defendant's mental or medical-health status that would be a barrier to his participation in sex offender treatment. Clounch noted defendant had some reading difficulties and had borderline low intelligence, but he did not believe any lack of treatment progress was due to an intellectual delay.

¶ 9        Clounch testified defendant was age 32 when he was convicted under a plea agreement of aggravated criminal sexual assault. The victim was a two-year-old unrelated female. Defendant admitted fondling the victim's vagina and penetrating her mouth with his penis. Regarding another charge that was dismissed under the plea agreement, defendant admitted he penetrated the vagina of a five-year-old female. When defendant was 38 years old, he was charged with predatory criminal sexual assault and aggravated criminal sexual abuse in relation to his sexual abuse of M.W., an 11-year-old female with an intellectual disability. Defendant had also previously been convicted of aggravated battery in connection with an offense involving his seven-week-old daughter. He further had been convicted of aggravated battery in connection with an incident involving his youngest son. Defendant was also previously convicted of failure to register as a sex offender.

¶ 10        Clounch testified defendant initially engaged in sex offender treatment following his release from prison for the first offense but did not continue treatment because he was unable to pay for it. Clounch reviewed defendant's treatment notes from the beginning of 2017 through

May 2023. He stated it was typical to receive approximately six years of notes, and he did not see anything in the notes indicating he should look at older documents because the documents showed a lack of progress in 2017.

¶ 11 Clounch testified defendant was currently enrolled in treatment consisting of a therapy group and a "dynamic risk factor group." Over time, defendant verbally participated in approximately 67% of the groups he attended. When he participated, he "had difficulty with understanding and addressing his cognitive distortions." For example, on multiple occasions, defendant described his offense against M.W. as a romantic relationship and referred to her as his "girlfriend." Clounch testified defendant also focused on a belief M.W. was partially responsible for the offense. Defendant was resistant to feedback challenging his distorted beliefs and continued to believe those distortions. In June 2017, defendant withdrew from the treatment program following what Clounch described as "a great deal of challenging against his beliefs." He resumed the program in November 2019.

¶ 12 Clounch testified it was clear defendant continued to need to address factors associated with his sexual offenses. Clounch noted defendant had only recently discussed the offenses against M.W. and had not addressed the offenses against the younger victims. When defendant resumed treatment, he spoke of four female victims between the ages of 12 and 13, which was inconsistent with his records and statements he made in his interview with Clounch. Defendant omitted the younger victims.

¶ 13 In March 2020, the treatment program was shut down due to the COVID-19 pandemic. Defendant completed work packets during that time. The program resumed for a time in May 2021. Through the end of 2021, there were times defendant complained about his ability to complete assignments due to medical issues. The program was shut down again in

December 2021 until March 2022. In early 2022, defendant again indicated he wished to withdraw from the program. Defendant indicated he had problems coming to the group because he got out of breath. Defendant ultimately remained in the program.

¶ 14 Clounch testified defendant had not made significant progress since his return to the program in 2019. Clounch repeated defendant reported the wrong ages for the victims and only addressed the offenses against M.W. Defendant also tended to enter into arguments and disagree with others in the treatment groups. He often spoke of issues unrelated to his offenses and rarely, if ever, discussed his offenses.

¶ 15 Clounch noted defendant recognized he had a deviant arousal for children. Defendant reported he had not had any recent deviant arousal or fantasies about children. However, Clounch opined defendant did not present an understanding of "core beliefs," which affect the way a person perceived current situations, or an understanding of high-risk situations. That concerned Clounch, as it was typical, even for individuals who have made little progress, to understand high-risk situations and provide at least a listing of such situations. Clounch also testified defendant did not understand the triggers to his "deviant cycle," which consists of factors precipitating past sexual offenses. For example, defendant did not recognize grooming behaviors involving the victim's families or distortions he had at the time of the offenses. Defendant also did not have a relapse-prevention plan. Instead, he reported his only intervention was to avoid children, which Clounch noted would be difficult in the community.

¶ 16 Clounch diagnosed defendant with pedophilic disorder, sexually attracted to females, nonexclusive. He testified that disorder was coupled with a propensity to commit sexual offenses. Clounch also assessed defendant's likelihood to reoffend using three actuarial assessments. The combined score of two of those assessments placed defendant with a "well-

above average or Level 4-B" risk of reoffending, which Clounch stated was "the highest level of risk that we currently have for the sex offenders that we evaluate." Another assessment calculated defendant's risk of reoffending at 40.1% for 5 years and 55.2% for 10 years. Ultimately, Clounch opined defendant had not made sufficient progress to reduce his risk of reoffending, and it was substantially probable defendant would commit additional offenses if not confined. Thus, Clounch opined defendant remained a sexually dangerous person. He further did not believe there were any conditions or restrictions the trial court could impose to keep the community safe if defendant were released.

¶ 17    On cross-examination, Clounch admitted defendant had been confined for 24 years without any violation or sexually inappropriate behavior. Defendant had also stated his past behavior was wrong. Defendant had been in some special education classes in school, but Clounch did not believe that had anything to do with his lack of progress in treatment. Clounch also testified conditional release was not appropriate because defendant could have contact with the community and with children. Defendant's medical issues did not change Clounch's opinion.

¶ 18    Carich testified he was a mental health professional who performed evaluations for individuals with sexually-aggressive issues. Carich agreed with Clounch's diagnosis, but he opined conditional release to a State mental hospital was more appropriate for defendant.

¶ 19    Carich testified defendant had special needs and expressed concern other individuals in the treatment program would take advantage of him because of his lower intellectual functioning. He gave examples of reports where other people in the program asked defendant to buy them things and never paid him back. Carich also opined defendant was not dangerous when within institutional confines. Carich noted areas in which defendant had made

- 6 -

progress, such as by better controlling his emotions and formulating a loose problem-solving strategy. Meanwhile, Carich testified defendant could form functional relationships in a mental hospital without being exploited.

¶ 20    Carich was critical of the assessments available to assess the risk of reoffending. After discussing his criticisms of the assessments and Clounch's scoring of them, Carich opined defendant was a "low average risk" to reoffend.

¶ 21    Carich was also critical of the treatment program used by DOC, characterizing it as punitive instead of therapeutic. Carich believed defendant was unable to make progress in the program because of his intellectual deficits. He opined defendant would thrive under "appropriate conditions in a structured environment." Thus, he recommended conditional release to a State mental hospital.

¶ 22    On cross-examination, Carich admitted he did not review defendant's treatment progress notes. He said he did not have any faith in the treatment and thus stated, "[T]here's no point in reviewing that." He also had not reviewed reports concerning defendant's criminal history. Defendant did not mention a two-year-old victim when Carich interviewed him. Carich explained faded memories and defendant's intellectual disability may have been the reason for that. Carich also testified defendant understood offending was wrong and that he could not be around children. Overall, Carich believed keeping defendant committed in a prison was unethical. At the end of the cross-examination, the trial court questioned the logic of releasing defendant to a facility which included people with intellectual disabilities when one of defendant's victims had such a disability. Carich responded the prison also had people with intellectual disabilities and defendant had not sexually abused anyone at the prison.

¶ 23       The trial court found defendant remained a sexually dangerous person in that he suffered from a mental disorder, existing for a period of not less than a year, coupled with criminal propensities to the commission of sex offenses, and demonstrated propensities toward the sexual molestation of children, and he had not recovered from that determination. In so finding, the court noted Clounch's opinion was based on a much more thorough review of the records and defendant's treatment progress. The court also appreciated Carich's "humanitarian outlook" but found his credibility and opinions were "obscured a little bit, if not a lot, by his clear personal dislike for the [civil commitment process]." The court found it was substantially probable defendant would commit a sex offense toward a child in the future if not confined. It further found it was not appropriate to release defendant to a facility where other individuals with mental disabilities resided. Thus, the court ordered defendant to remain in DOC custody.

¶ 24       This appeal followed.

¶ 25                    II. ANALYSIS

¶ 26       On appeal, defendant argues the trial court erred by denying his application for conditional release. He contends (1) the evidence did not support the court's finding he remained a sexually dangerous person and (2) the court should have released him to a State mental hospital.

¶ 27       Defendant first contends the evidence was insufficient to show he remained a sexually dangerous person because he had been in active treatment for most of his 24-year commitment and, in light of his "borderline to low intelligence," he likely reached a point where it was difficult to progress when placed in a punitive setting. Defendant further argues the evidence showed he followed the rules and had not committed any offenses while committed.

He also suggests Clounch's testimony lacked credibility because Clounch failed to consider the full range of his treatment records.

¶ 28     Under section 1.01 of the Act (725 ILCS 205/1.01 (West 2022)), a person is sexually dangerous if he has (1) a mental disorder existing for at least one year before the petition was filed, (2) criminal propensities to the commission of sex offenses, and (3) demonstrated propensities toward acts of sexual assault or sexual molestation of children. See *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 103, 48 N.E.3d 185. " '[C]riminal propensities to the commission of sex offenses' means that it is substantially probable that the person subject to the commitment proceedings will engage in the commission of sex offenses in the future if not confined." 725 ILCS 205/4.05 (West 2022). Defendant disputes only the issue of whether it is substantially probable he will reoffend.

¶ 29     Under section 9(a) of the Act, a person who has been found to be sexually dangerous may submit an application to the trial court setting forth facts showing he has recovered. 725 ILCS 205/9(a) (West 2022). The court must then hold a hearing, wherein the State has the burden to prove by clear and convincing evidence the individual remains sexually dangerous. See *People v. Bailey*, 2015 IL App (3d) 140497, ¶ 12, 40 N.E.3d 839. If the person is found to be no longer dangerous, the court shall order the person discharged. 725 ILCS 205/9(e) (West 2022). The court may conditionally discharge an individual if it finds he "appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that the person has fully recovered." 725 ILCS 205/9(e) (West 2022).

¶ 30     Defendant suggests we review the matter for an abuse of discretion. However, we review the trial court's decision regarding discharge of a defendant under the Act under a

manifest-weight-of-the-evidence standard. *People v. Guthrie*, 2016 IL App (4th) 150617, ¶ 35, 57 N.E.3d 621. "A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent." (Internal quotation marks omitted.) *Guthrie*, 2016 IL App (4th) 150617, ¶ 35. We also note the trier of fact is in the best position to weigh the evidence and assess the credibility of the testimony and evidence presented. *People v. Houde*, 2019 IL App (3d) 180309, ¶ 26, 143 N.E.3d 917.

¶ 31　　　　　Here, the trial court's determination defendant remained a sexually dangerous person was not against the manifest weight of the evidence. The State presented expert testimony defendant had not made sufficient progress in treatment and it was substantially probable he would engage in the commission of sex offenses against children in the future if not confined. Clounch presented evidence defendant had not fully addressed his past offenses, especially in regard to young children, and had actively avoided discussing those by failing to accurately describe the ages of his victims. Assessments placed defendant in the "well-above average or Level 4-B" risk of reoffending, which Clounch stated was "the highest level of risk that we currently have for the sex offenders that we evaluate." While Carich disagreed with that determination, the court questioned his credibility in light of his personal dislike of the commitment process. Further, while Clounch reviewed only six years of progress notes, he explained why that was sufficient. Meanwhile, Carich testified he did not review any of the progress notes. The determination of credibility of the witnesses was a matter for the trial court, and we will not second guess that determination on appeal. Overall, it is not clearly apparent defendant was no longer a sexually dangerous person. Thus, the court's determination was not against the manifest weight of the evidence.

¶ 32    Defendant next argues the trial court erred by failing to release him to a State mental health hospital. As previously noted, section 9(e) of the Act provides the court may conditionally discharge an individual if it finds he "appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that the person has fully recovered." 725 ILCS 205/9(e) (West 2022).

¶ 33    Here, as discussed, the trial court found defendant remained sexually dangerous. Thus, the application of section 9(e) allowing for conditional release was not triggered. Without a determination defendant no longer remained dangerous, the court could not release him to a mental hospital. Further, even if the court had the authority to do so absent such a finding, the court here articulated a valid reason not to do so. The court noted defendant had previously abused a victim with an intellectual disability and indicated it was not appropriate to release defendant to a facility where other individuals with mental disabilities resided.

¶ 34                            III. CONCLUSION

¶ 35    For the reasons stated, we affirm the trial court's order denying defendant's application for discharge or conditional release.

¶ 36    Affirmed.